HEARD NOVEMBER TERM, 1874.

### BACOT *vs.* HEYWARD.

A trust for the joint use of husband and wife, during their joint lives, and for the use of the survivor for life, and then, after the death of the survivor, in trust, to deliver up the property to the issue of the marriage, &c., is not executed until delivery of the property after the death of the survivor.

The trustee of a bond given for the purchase money of slaves compromised the debt by taking one-half and giving a release for the other money. This was done before the question as to the validity of such bonds had been settled. In an action against the obligor by a *cestui que trust;* who was *sui juris* when the compromise was made, but who was not consulted, because he was absent from the State and his whereabouts unknown, *held* that the obligor was discharged by the release, the compromise having been made under such circumstances as would have entitled it to the sanction of the Court had previous application been made.

Although, as a general rule, a trustee may not compromise a debt, yet where he does so under such circumstances as would have obtained for it the sanction of the Court, had a previous application been made, it will be sustained if afterwards questioned.

BEFORE GRAHAM, J., AT CHARLESTON, APRIL TERM, 1873.

This was an action by R. D. Bacot, plaintiff, against D. Heyward and W. G. DeSaussure, defendants.

By a deed of marriage settlement, dated 20th April, 1843, between R. H. Bacot, the intended husband of the first part, Mary L. Cuthbert, the intended wife of the second part, and George Cuthbert, trustee of the third part, certain bonds, the property of the intended wife, were conveyed to the trustee, in trust for the husband and wife, during their joint lives, and the survivor for

life, and, after the death of the survivor, "in trust, to deliver up to the issue of the said intended marriage, or the representatives of such of the issue as may be deceased, they taking among them a parent's share, all the property" conveyed to the trustee, "freed and discharged from all further and other trusts, to be held by them, their heirs, executors, administrators and assigns forever." R. H. Bacot, the husband, died in 1862, and Mary L., his widow, survived until 1865, when she also died. Five children, issue of the marriage, survived their mother, Eliza M. F. Bacot and the plaintiff, R. D. Bacot, being two of them.

In 1868, George Cuthbert, the trustee, was dead, and of the bonds included in the settlement two only remained, one of which was a bond given by D. Heyward, the defendant, for the purchase money of slaves, and they were in the custody of the Court of Equity, and in the hands of one of its Masters. In the year last mentioned Eliza M. F. Bacot filed a petition in the Court of Equity, praying that she be appointed guardian of such of her brothers and sisters as were minors, but was unable to give the bond required of her, and thereupon the Master submitted a report to the Court, wherein he stated that the *cestuis que trust* were in necessitous circumstances, and as there was no one who had authority to sue upon and enforce collection of the bonds, he recommended that they be delivered to W. G. DeSaussure, Esq., a kinsman of the parties; that he be substituted as trustee under the deed of marriage settlement, without being required to give security as trustee; and that he be directed to institute such legal proceedings as may be necessary for the recovery of the debts.

Upon that report the following order, dated December 18, 1868, was made by the Court:

LESESNE, Ch. Upon hearing the report of Master Gray read, in which is set forth the terms of the trust deed therein referred to, and in view of the peculiar circumstances of the case, and of the necessities of the parties interested under the said deed, ordered that the same be confirmed.

And it is further ordered that Wilmot G. DeSaussure, a kinsman of the said parties, be substituted as trustee under the deed of conveyance, in trust between Richard H. Bacot, Mary Louisa Cuthbert, and George Cuthbert, trustee; that the bonds of Daniel Heyward and William W. Elliott, to the said George Cuthbert,

trustee, be delivered to him, and that he be authorized and empowered to institute such legal proceedings thereupon, for the recovery of the debts and interest due thereupon, as he may be advised to; and that, upon the recovery thereof, he do account with and pay over to the several parties in interest their respective proportions thereof, the costs and expenses of such recovery, and of these proceedings, being first deducted therefrom.

Mr. DeSaussure commenced action on the bond of Heyward, and on the 12th March, 1870, recovered judgment thereon, the sum actually due upon the condition being $22,615.28. The judgment was taken, subject to the final decision, by the Court of last resort, of the then pending question as to the validity of "negro bonds."

After the judgment was recovered, and before the Supreme Court of the State had decided "negro bonds" to be valid, as it afterwards did, (see *Calhoun* vs. *Calhoun*, 2 S. C., 283,) a compromise was agreed upon and carried into effect, between Mr. DeSaussure and Mr. Heyward, whereby, in consideration of a sum of money, equal to, or very near equal to, one half the debt, paid by the latter to the former, Mr. DeSaussure signed and delivered to Mr. Heyward a discharge, in writing, from all further liability on the bond, delivered up the same to him, and entered satisfaction on the judgment.

The compromise was known and approved of by all the *cestuis que trust*, except R. D. Bacot, the plaintiff, who, at the time it was agreed upon and effected, was absent from the State, and, although of age, was not consulted, because it was not known where he was.

On his return to the State the plaintiff refused to recognize the entry of satisfaction on the judgment as binding upon him, and commenced this action to have the same set aside and vacated, so far as his rights were concerned, and for the recovery, from Mr. Heyward, of his proportion or share—one-fifth—of so much of the debt as had not been paid to the trustee. No relief was demanded as against Mr. DeSaussure.

At November Term, 1873, the Court made an order, which—reciting that the pleadings presented the following question: "Did Mr. DeSaussure assume any authority to act for the plaintiff when he made his settlement with the defendant?"—directed that the parties have leave to submit this issue to a jury, at the next term of the Court.

At March Term, 1874, this issue was submitted to a jury, who found the following verdict: " We find that Mr. DeSaussure did assume authority to act for the plaintiff when he made his settlement with the defendant."

On April 23, 1874, the following decree, dismissing the complaint, was made by His Honor:

GRAHAM, J. By the order made by me in this action on the 5th November, 1873, it was ordered that the parties to the cause have leave to submit to a jury the question of fact made in the case.

This was the question whether Mr. DeSaussure did assume any authority to act for the plaintiff when he made the settlement with the defendant.

At the February Term of the Court, on the 17th March, 1874, this question having been submitted to a jury, they found as follows: " We find that Mr. DeSaussure did assume authority to act for the plaintiff when he made his settlement with the defendant."

The question of fact being thus settled, I am of the opinion that, although Mr. DeSaussure, the trustee, had no express authority to compromise the claim of the plaintiff, yet the trustee, having assumed such authority, his action in the matter can now be confirmed and validated, if approved by the Court.

And upon examination of the compromise made by him as trustee of the plaintiff, it appearing to me that it was made in good faith, and was in itself equitable, and justified by surrounding circumstances and the position of the claim at that time:

It is ordered that the compromise made by Mr. DeSaussure, the trustee of the plaintiff, with the defendant, be approved and confirmed, and that the complaint be dismissed.

The plaintiff appealed upon the ground:

Because, it being admitted that the plaintiff was of full age at the date of compromise, the Court erred in deciding that although Mr. DeSaussure, the trustee, had no express authority to compromise the claim of the plaintiff, yet the trustee, having assumed such authority, his action in the matter can now be confirmed and validated, if approved by the Court.

*Walker & Bacot,* with whom were *Simonton & Barker,* for appellant.

*Hanckel,* contra.

Jan. 14, 1875. The opinion of the Court was delivered by

Moses, C. J. The complaint prays no relief against Mr. DeSaussure, the trustee, who is made a party defendant in the cause. Whatever liability (if any,) he may have incurred for the entry of satisfaction on the judgment against the respondent, Heyward, the appellant, forbears from enforcing it.

The verdict of the jury, on the issue submitted to it, establishes the fact that the trustee " did assume authority to act for the plaintiff when he made his settlement with defendant." We can not regard this conclusion as in any way affecting the right of the parties. Whether Mr. DeSaussure did or did not induce Mr. Heyward to suppose that, in the compromise of the jugdment, he was authorized to act for the plaintiff, can be of no material consequence. He could not bind the latter by any assumption of powers which he did not in fact possess. So far as the plaintiff was concerned, it was no element in the case that could in the least operate to the prejudice of his right. If the powers exercised by the trustee did attach to his office, the bare assumption of it, without authority from the plaintiff, could in no way contribute to the confirmation of his act.

The issue passed upon by the jury may be of consequence in one aspect. If it was intended to determine the fact alleged in the answer of the trustee, that, according to the express understanding with Mr. Heyward, the entry of satisfaction was not to conclude the plaintiff, but, so far as it involved his interest, was to be subject to his decision, we can then see its propriety, and, perhaps, its necessity. From the pleadings we must so hold, while we may be allowed to say that it was not framed in words the best calculated to express its purpose.

In January, 1867, by the order of the Court, on a petition for guardianship, in which all the children were before it, the assets of the estate of their mother, derived from her marriage settlement, (which included this bond,) were placed in the hands of the Master of the Court of Equity, and were, therefore, in its custody, and subject to its control. By the order of the Chancellor, of 18th December, 1868, based upon the report of the Master, in regard to the destitute and necessitous condition of the children, whose whole property consisted of this bond and one other, Mr. DeSaussure was substituted trustee under the original deed, ordered to collect the

bonds, and, on their recovery, to account with and pay over to the several parties in interest their respective proportions.

Even applying the Statute of Uses, by analogy, to trusts of personalty, the trust, under the deed of marriage settlement, was not executed, because, after the death of the survivor of the husband and wife, the property was still to remain in the hands of the trustee, to enable him to execute the final purpose of its creation, to wit: the delivery "to the issue of the marriage, or the representatives of such of the issue as may be deceased," of all the property conveyed by the deed. The order of the Chancellor prescribed the course which Mr. DeSaussure was to pursue in regard to the bond. He was to institute legal proceedings for its recovery, and, when collected, to pay to the several parties in interest their respective proportions of the proceeds. No one was authorized to receive but him, and through him the distribution was to be made. Not until such disposition did the trust terminate. The minority of some of the *cestuis que trust* disqualified them from so receiving their shares as properly to discharge the trustee, and though such of them as were *sui juris* were in a position to accept their proportions, and thus release the trustee, yet equity does not recognize the partial execution of a trust as destroying or discharging it, but regards it as a whole, only to be determined by its entire execution.

In the decree *Ex Parte Gadsden*, 3 Rich., 477, which was affirmed by the whole Court, Chancellor Harper. says: "It was suggested in the cause that, as the trust was for a married woman and her children, as tenants in common, the estate might remain in the trustee, so far as the share of the *feme covert* was concerned, and the interests of the children be executed in them. The grounds on which I have decided the cause make an answer to that suggestion. The whole fee was conveyed to the trustees, and the estate remained in them, at all events, during the life of Collar, and there is nothing to divest it afterwards. The power to sell relates to the whole estate, and, to satisfy that, the whole estate must remain in them. I was of opinion, however, that in no case could there be such a partial execution of a use. The estate is one, and must be executed either in the trustee or the *cestui que trust*. As observed by Lord Hardwicke, in *Gibson* vs. *Rogers*, this Court will not make fractions and consider them as trustees for only part of the inheritance."

The terms of the settlement in *Harley* vs. *Platt*, 6 Rich., 310,

cannot, in their effect, be distinguished from the language of the deed under which the plaintiff here claims. There the Court held that the trust was not executed on the death of the wife, but remained in the trustee until the delivery of the property to the daughter, on her becoming *sui juris,* or to some one legally authorized to receive for her.

The appellant (Bacot) was a minor when the order of the Chancellor was made—was absent beyond seas—and his whereabouts unknown when the compromise was effected by the trustee, who was without the means of ascertaining his wishes in relation to it, nor did he return home for some months subsequent to the completion, through the consent of those *sui juris,* who were in reach of the trustee.

The compromise having been concluded, under the circumstances stated, and carried into effect by the entry of satisfaction on the judgment, the plaintiff calls upon the Court to set it aside and require the defendant (Heyward) to pay him his proportion of the bond, which was discharged by the agreement between the trustee and Heyward:

It cannot be questioned that, as a general right, incident to his office, a trustee has no power to compromise a debt on behalf of his *cestui que trust.* Any other rule would at once destroy all the safeguards which the Courts, both of law and equity, surround property thus held, and, by freeing the hands of the trustees from the fetters with which the judicial wisdom of years has seen proper to bind them, would allow them to destroy where they should protect. While, however, the general right is withheld, its denial is subject to conditions and exceptions which qualify the rule. If the Court which is asked to vacate it finds, from an examination of the circumstances under which it was made, that its sanction to the trustee, if previously applied for, would have been accorded, it will recognize it as an act consistent with the principles and doctrines which it enforces, and sustain it where the consent of one *sui juris* now, as the event has transpired, interested to defeat it, by force of preventing causes, could not be obtained by the trustee.

Mr. Lewin, in his work on Trustees, p. 513, says : " But under particular circumstances, the trustee is held capable of exercising the discretionary power of the *bona fide* proprietor ; for the trust estate might otherwise be injuriously affected. The necessity of the moment may demand an immediate decision, while the sanction of

Bacot *vs.* Heyward.

the parties who are beneficially interested cannot be secured without great inconvenience."

In Sanders on Uses and Trusts, 431, it is said: "It is, generally speaking, a rule that a trustee releasing or compromising a debt due to the trust estate must answer for the loss occasioned by such release or compromise; yet this rule must always depend upon the particular circumstances of the case, for when a trustee, in releasing or compounding a debt, acts from prudential motives, and with a view to benefit the trust property, the Courts will consider his conduct not excusable, but in many instances laudable."

Perry on Trusts, 436, says: "But there are circumstances where a trustee must exercise the discretionary powers of an absolute owner, otherwise great loss might happen to the estate. The exigencies of the moment may demand immediate action." The principles thus enumerated have been accepted as the governing rule, applicable to the subject now under examination, in the opinion of this Court, in *Smith* vs. *Prothro*, 2 S. C., 373.

If the force of circumstances preclude all opportunity of consultation with the *cestui que trust, sui juris,* in the particular matter in which the trustee is called upon to act, where the chances of loss appear equal to those of gain to the parties interested in the trust confided to him, his resort should be to the Court for instructions for his guidance. The pressure of the occasion may even prevent this, and compel the trustee to rely and act on his own honest judgment. If the nature of the transaction, though it may even be the compromise of a debt, shows that he was actuated by good intention, and exercised due caution and fidelity in respect to the interests of his *cestui que trust*, a Court of Equity will confirm what it would, on due application, have ordered, for the result to the trust property, in either event, is precisely the same. " It is a general rule of equity that what is compellable by suit, or would have been ordered by the Court, is equally valid, if done by the trustee *without suit, i. e.* without the sanction of the Court."—Lewin on Trusts, 513, and the authorities there referred to.

In *Sollee* vs. *Croft*, 7 Rich. Eq., 45, Chancellor Wardlaw, delivering the opinion confirmed by the whole Court, says: "It is quite proper to sanction now, when all the parties are represented, whatever the Court should have then authorized, and especially what the Court did then authorize upon sufficient evidence, but not in a form to bind all parties in interest."

In the case before us the validity of the judgment was subject to the decision of this Court on a question which had attracted great public attention, not only from the very large pecuniary interests which would be affected by it throughout the State, but from the fact that it involved questions of a political character, arising out of the but lately adopted Constitution. The opinions of those who stood foremost in the legal professions were divided—the public, regarding the doubts on both sides as well founded, realized the position. So great was the diversity of views, that the Court of the last resort, in an adjoining State, on the very question growing out of the Constitution, reached a conclusion the very opposite to that at which we arrived. If the provision in our Constitution, which forbade the collection of debts, of which the consideration was slaves, had not been held a violation of the Constitution of the United States, the whole judgment recovered by the trustee before us would have been lost. The doubt not only prevailed, but, from the distracted opinions of those in whose legal ability the greatest confidence had been reposed, the community accepted it as well justified by the nature of the question, and adjustments were made by cautious and prudent persons, induced by the great uncertainty which prevailed as to what would be the final judgment of the Court. Under these circumstances, the compromise of the respondents would well have recommended itself to the approval of the Court, if it had been previously sought.

In this view, the judgment of the Circuit Judge must be affirmed, and the motion dismissed.

*Wright*, A. J., and *Willard*, A. J., concurred.