## HERMAN F. HEYN v. FELIX O'HAGEN.

*Estoppel defined—Party complaining must have taken some action in reliance
upon the statement or conduct of defendant—Expenditures in litigation
may be a basis for an estoppel—Ratification—May be express or
implied—Agent or volunteer—Good or bad faith of latter, im-
material, if party dealt with acts bonafidely.*

1. The principle is well settled "that if a man, either by word or con-
   duct, has intimated that he consents to an act which has been done
   and will offer no opposition thereto, although it could not lawfully
   have been done without his consent, and thereby induces others to do
   that from which they otherwise might have abstained, he cannot ques-
   tion the legality of the act, so sanctioned, to the prejudice of those
   who have so given faith to his words or to the fair inference to be

drawn from his conduct:" *Truesdail v. Ward*, 24 Mich. 117–134, and cases cited on page 135.

2. It is essential to the application of this principle, that the party complaining "was induced to take some action in reliance upon the statement or conduct of the party sought to be charged, which he otherwise would not have taken, and which operated to his prejudice."

3. Expenditures in litigation, commenced in reliance upon such statement or conduct, may as reasonably constitute the basis of an estoppel as any other expenditures: *Meister v. Birney*, 24 Mich. 435.

4. Ratification of an unauthorized act may be express or implied, and when not express, the facts and circumstances from which it may be inferred must be such as are inconsistent with a different intention.

5. "Whether silence operates as presumptive proof of ratification of the act of a mere volunteer, must depend upon the particular circumstances of the case. If those circumstances are such, that the inaction or silence of the party sought to be charged, as principal, would be likely to cause injury to the person giving credit to, and relying upon such assumed agency, or to induce him to believe such agency did in fact exist, and to act upon such belief, to his detriment, then such silence or inaction may be considered as a ratification of the agency.

6. "The qualification of good faith is unnecessary in the person who assumes, without authority, to act as agent. If the person with whom he deals, as agent, acts in good faith and with reasonable care, the act is capable of being ratified by the person on whose behalf such pretended agent assumes to act, whether the agent himself acts bona fide or mala fide."

Error to Marquette. (Grant, J.) Argued February 4, 1886. Decided February 17, 1886.

Assumpsit. Defendant brings error. Affirmed. The facts are stated in the opinion.

*F. O. Clark*, for appellant:

The promise of defendants, if made, to pay the balance due plaintiff, was void, not being in writing, as required by How. Stat. § 6185 (second clause), which applied *only* to promises which are in the nature of guarantees for some other or original or primary obligation to be performed by another: *Gibbs v. Blanchard*, 15 Mich. 23, 30; *Rogers v. Neilson*, 14 Wend. 113. The words, "original" and "col-

lateral," are used, the former to mark the obligation of the principal debtor, the latter, that of the surety or person who undertakes to answer for such debt: *Mallory v. Gillett*, 21 N. Y. 414; and such collateral promise, to be binding, must be in writing: *Brown v. Hazen*, 11 Mich. 221; *Hall v. Soule*, Id. 496, 7; *Huntington v. Wellington*, 12 Mich. 12–15; *Bresler v. Pendell*, Id. 224; *Farwell v. Dewey*, Id. 436; *Hogsett v. Ellis*, 17 Mich. 351; *Waldo v. Simonson*, 18 Mich. 353; *Curtis v. Brown*, 5 Cush. 492. The promise being void, if made, can it be validated by the doctrine of estoppel? Where estoppel forms the foundation of the relief asked, or is relied upon to defeat the plaintiff's right, it cannot be proved unless alleged: Bigelow on Estoppel (2d ed.), 519–520; *Cicotte v. Gagnier*, 2 Mich. 381; *Thayer v. Arnold*, 32 Mich. 336, 340–1; *Dale v. Turner*, 34 Mich. 405–17–18. Plaintiff's declaration is on the common counts; it should have been special in order to claim rights under an estoppel.

Promises, void under the statute of frauds, can never be given force and binding effect by the application of the doctrine of estoppel: *Wright v. DeGroff*, 14 Mich. 164; *Holland v. Hoyt*, Id. 238; *Brightman v. Hicks*, 108 Mass. 246; Bigelow on Estoppel, 2d ed., 438–9, 448, note. There is no estoppel, by silence, where one need not speak: *Cicotte v. Gagnier*, 2 Mich. 381; *Hickey v. Hinsdale*, 12 Mich. 99; *McAuliffe v. Mann*, 37 Mich. 539. An estoppel never rests upon ambiguous facts, but must be clearly made out by unequivocal facts, not susceptible of two constructions. For this reason the doctrine of estoppel does not apply in this case: *Fredenburg v. Lyon Lake M. E. Church*, 37 Mich. 476; *Rust v. Bennett*, 39 Mich. 521; Bigelow on Estoppel, 2d ed., 431–41.

*Hayden & Young*, for plaintiff:

If a principal ratifies and adopts the agent's acts, even for a moment, he is bound by them, and if one part of the transaction is ratified, this is a ratification of the whole: Ewell's Evans' Agency (marg. p.) 65 and cases cited. Silence, when good faith requires one to speak, or where one knows another is treating a third party as his agent, is a ratification: Id. 69. *Prince v. Clark*, 1 B. & C. 186, covers this case. As to the effect of the assent of defendant to the act of the alleged agent, see following cases: *Sherman v. Sherman*, 2 Vern. 276; *Field v. Moulson*, 2 Wash. C. C. 155; *Miller v. Bruns*, 41 Ill. 293; *Wiggins v. Burkham*, 10 Wall. 129.

CHAMPLIN, J. The plaintiff brought suit in assumpsit, in justice court, against the defendant, and declared upon the common count for goods sold and delivered. The defense was the general issue. The plaintiff recovered, and on appeal to the circuit the case was tried before the court, without a jury, who made a written finding of facts and his conclusions of law thereon, as follows:

"On August 19, 1884, a shoemaker, living in Marquette, known to plaintiff as such, and seen by plaintiff once before in a shop at Marquette once carried on by defendant, and who represented to plaintiff that he was in the employ of defendant and represented defendant, applied to plaintiff, a dealer in leather, at Ishpeming, for certain goods which he wished to purchase for defendant, as he represented.

"Defendant had been engaged in the business at Marquette, and some time before this had purchased in person like goods of plaintiff.

"Plaintiff, believing from the representations of the shoemaker, whose name is unknown to plaintiff, that he was the authorized agent of defendant, permitted the supposed agent to make a selection of goods, which the shoemaker did, and on the same day plaintiff, who did not deliver the goods to the shoemaker, sent the goods by express, marked to defendant, at Marquette, as follows: 'F. O'Hagen, Marquette, Mich.' Plaintiff also sent to defendant on the same day, by mail, an invoice of the goods, directed to defendant, at Marquette. The amount was $25.17.

"On September 9th, following, the same shoemaker, in the same manner, purchased another bill of goods of plaintiff, amounting to $16.89, which were sent on the same day of purchase by express to defendant, at Marquette, the same as before, and an invoice of the same was mailed to defendant at the same time by the plaintiff, and was received by the defendant in the course of mail. Each bill was sold on thirty days' time. Defendant received the first invoice by mail three or four days after its date, but said nothing to plaintiff in objection to the charge therein or the sale implied thereby. Defendant had not authorized the shoemaker to make such purchases, did not receive the goods or use them, but suspected immediately on receiving the invoice by mail that this shoemaker, who was doing business in the shop formerly occupied by defendant, had ordered the goods in his name, and two or three days after the receipt of the invoice went to this person, asked him about it, found his

suspicion true, and that this person had also obtained the goods which had been shipped to defendant.

"Defendant made no mention of these facts to plaintiff until he called on him for payment, though he found out some days before the purchase by the shoemaker of the second invoice.

"Plaintiff had no reason to suspect the true state of affairs until September 19th following, when he went to Marquette, and called in person with defendant at the shop of the shoemaker who had obtained the goods, supposing it to be defendant's shop, where plaintiff saw both invoices which he had mailed to defendant.

"The testimony is contradictory as to what took place between defendant and plaintiff at this time.

"I find that after the goods were shipped to defendant, and the first bill became due, plaintiff applied to defendant for payment; that at the suggestion of defendant both went to the shop of the man who had ordered the goods; that this man then paid the plaintiff $21; that both the invoices were at that time in the shop, and that the $21 were credited on the first invoice, and that defendant then told the plaintiff that he would see that he got the balance of the money, but forbade him sending any more goods in that way."

The following is the law, as found by the circuit judge:

(1) By failing to notify plaintiff of the true state of affairs after he had become fully informed thereof, under the circumstances of this case, defendant misled plaintiff to his injury, and is estopped by such conduct from taking advantage of the real want of authority in the shoemaker to make the purchases in question in his name.

(2) Defendant by his conduct ratified the purchases.

(3) Plaintiff is entitled to judgment against the defendant for such balance, amounting to the sum of $21.06, with interest at seven per cent. from October 9, 1884.

The principle is well established,

"That if a man either by word or by conduct has intimated that he consents to an act which has been done, and that he will offer no opposition to it, although it could not lawfully have been done without his consent, and he thereby induces others to do that from which they otherwise might have abstained, he cannot question the legality of the act he had so sanctioned, to the prejudice of those who have so given

faith to his words, or to the fair inference to be drawn from his conduct:"

*Cairncross v. Lorimer*, 7 Jur. (N. S.) 149 ; *Truesdail v. Ward*, 24 Mich. 117, 134, and cases cited on page 135.

But there can be no estoppel unless the plaintiff was induced to take some action in reliance upon the statement or conduct of the defendant which otherwise he would not have taken, and which operated to his prejudice. " Expenditures in litigation may as reasonably constitute the basis of an estoppel as any .other expenditures:" *Meister v. Birney*, 24 Mich. 435.

The finding of facts shows that the plaintiff, upon selling the first bill, took the precaution to mail the invoice directly to defendant, and to send the goods by express directed to him. This invoice was received through the mail in due course, and within three or four days after its date, and defendant suspected immediately that this shoemaker, who was doing business in the shop formerly occupied by him, had ordered the goods in his name, and two or three days thereafter went to this person and asked him about it, and found his suspicion true; that is, that he had ordered the goods in his name, and also that this person had obtained the goods which had been shipped to him. Notwithstanding he had now become fully informed of the fact that this shoemaker had represented himself to the plaintiff to be the agent of defendant, and had ordered the goods for him or in his name, and knew that the goods were invoiced and consigned to him, yet he did nothing and said nothing to repudiate the transaction, or to inform the plaintiff that he had not received the goods, and had not made the purchase.

The fact further appears that defendant had been engaged in the shoemaking business at Marquette, and at some time previous had purchased in person like goods of plaintiff. When plaintiff called upon defendant for pay, he suggested that they both should go together to the shop of the man who had ordered the goods. Both invoices were found at the shop, and the man made payment of $21, which was then indorsed upon the first invoice, and defendant promised

the plaintiff that he would see that he got the balance of the money.

Now it cannot be presumed that what occurred in the shop at that time between the parties had no influence upon the conduct of the plaintiff. Had defendant repudiated the transaction and refused to pay for the goods, the plaintiff might have immediately proceeded to obtain possession of them, and to take such other remedy as the law afforded to secure his rights. Defendant's promise of payment estopped him from afterwards asserting that he was not bound by it. The plaintiff relied upon it, and has instituted this suit to enforce it. Under the authority of *Meister v. Birney*, he should be entitled to recover. But he need not rely alone upon the doctrine of estoppel. Under the facts found, the question is clear to me that the defendant has ratified the act of the shoemaker in ordering the goods in the name of the defendant. "To ratify is to give sanction and validity to something done without authority by one individual on behalf of another": Evans, Ag. 48. Ratification may be express or implied. When there is no express ratification, the facts and circumstances from which a ratification may be inferred must be such as are inconsistent with a different intention. Here the ratification, if any exist, must be inferred from the silence of defendant, and his neglect to inform the plaintiff that he had not authorized the shoemaker to purchase goods on his credit, or to order them in his name, after he was fully informed of the facts.

In considering whether the facts and circumstances of a particular case are sufficient evidence of a ratification, the distinction has been made between the unauthorized act of an agent where the relation of principal and agent already exists, and that of a mere volunteer or stranger. In the former case it is said that an intention to ratify will always be presumed from the silence of the principal after being informed of what has been done on his account, while in the latter case it has been said there exists no obligation to repudiate the transaction, nor will silence be construed into a ratification: 2 Duer, 154, 178–182, note 5; 1 Arn. Ins.

151; Story, Ag. §§ 255, 258; *Ward v. Williams*, 26 Ill. 451; *Gold Min. Co. v. National Bank*, 96 U. S. 640.

Whether silence operates as presumptive proof of ratification of the act of a mere volunteer, must depend upon the particular circumstances of the case. If those circumstances are such that the inaction or silence of the party sought to be charged as principal would be likely to cause injury to the person giving credit to, and relying upon, such assumed agency, or to induce him to believe such agency did in fact exist, and to act upon such belief to his detriment, then such silence or inaction may be considered as a ratification of the agency.

The rule is stated by the Supreme Court of Wisconsin in the case of *Saveland v. Green*, 40 Wis. 438, as follows:

"The rule as to what amounts to a ratification of an unauthorized act is elementary, and may be stated thus: When a person assumes in good faith to act as agent for another in a given transaction, but acts without authority, whether the relation of principal and agent does or does not exist between them, the person in whose behalf the act was done, upon being fully informed thereof, must, within a reasonable time, disaffirm the act, at least in cases where his silence might operate to the prejudice of innocent parties, or he will be held to have ratified such unauthorized act."

The qualification of good faith is, it seems to me, unnecessary in the person who assumes, without authority, to act as agent. If the person with whom he deals as agent acts in good faith, and with reasonable care, the act is capable of being ratified by the person on whose behalf such pretended agent assumes to act, whether the agent himself acts *bona fide* or *mala fide*.

In this case the direct results of the silence of defendant, and his neglect to inform plaintiff in a reasonable time after he was fully informed of what had been done, was to lead plaintiff into the belief that the shoemaker was in fact the agent of defendant, and caused the plaintiff to sell to defendant, as he supposed, another invoice of goods, which he sent to defendant by express, and also mailed to him the invoice of the second bill, which defendant received. Here, by his

silence, he permitted this shoemaker, whose name neither the plaintiff nor defendant knows, to defraud the plaintiff by pretending to act for and on his behalf. Under these circumstances defendant, by his silence and tacit acquiescence in the conduct of the shoemaker, must be held to have ratified the agency. Defendant knew that the goods were sent to him by express, and knew that the shoemaker had in some manner gotten possession of the goods from the express company. How, it does not appear; whether by defendant's direction or assent, or by the shoemaker's representing himself to the company as the agent of defendant. Defendant, however, knew that the shoemaker had received both consignments of goods from the express office, and he had left both invoices with the shoemaker. He went with plaintiff to the shop occupied by the shoemaker, who then paid $21, which was indorsed upon the first invoice, and defendant then told the plaintiff that he would see that he got the balance of the money, but forbade him from sending any more goods in that way. This promise was not to pay the debt of another, but his own debt. It does not appear that defendant at this time repudiated the agency or the authority of the shoemaker to order the goods upon his credit. He had, by his contract, ratified the act, and his promise was not that he would see that the shoemaker would pay the balance, but that he would see that he got the balance of the money.

The statute of frauds has no application to the facts of this case. It was the promise of the defendant to pay his own debt, made so by his ratification of the act of the shoemaker in ordering the goods in his name. He remained silent when he should have spoken, and by his silence led the plaintiff to believe that he was his debtor, while lying by and seeing another person appropriate goods which had been consigned to him under representations that he had ordered them.

The judgment should be affirmed.

The other Justices concurred.