| 84 | 641 |
| 88 | 107 |

WALLACE A. PRESTON AND FREDERICK COLLINS v.
HENRY M. ZEKIND.

*Statute of frauds—Promise to pay debt of another—Estoppel.*

In this case it is held that if defendant impliedly promised to pay
   plaintiffs for materials furnished to third parties, who had con-
   tracted to build defendant a house, by asking plaintiffs to wait
   for their pay until a certain date, there is nothing on the
   record to take such promise out of the statute of frauds, by
   estoppel or otherwise.

84 MICH—41.

Error to Berrien. (O'Hara, J.) Argued January 16, 1891. Decided February 27, 1891.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Lawrence C. Fyfe,* for appellant.

*N. A. Hamilton,* for plaintiffs.

Morse, J. This is a suit in *assumpsit* upon the common counts to recover the sum of $1,245.55, with interest from December 12, 1888. The plaintiffs' claim is that this sum is the balance due them upon materials furnished and used in the building of a house owned by defendant. The house was built for defendant by two carpenters, Kupperness and Johnson. The defendant claims that these carpenters contracted to build his house and furnish the materials at the stated sum of $3,400, and they are the persons liable to plaintiffs for the materials furnished.

It does not appear that defendant ever made any contract with plaintiffs for any part of these materials. The full bill of plaintiffs was $1,845.55, upon which Kupperness and Johnson paid $600. The materials were ordered of plaintiffs by Kupperness and Johnson. Plaintiffs charged them on their books to the account of "H. M. Zekind House. Kupperness-Johnson,"—supposing they would have a lien upon the house under the lien law, since declared unconstitutional by this Court. The claim of the plaintiffs to recover from defendant seems to be based wholly upon conversations with the defendant after part of the materials had been furnished. Mr. Collins, one of the plaintiffs, testifies that just before October, 1888, after most of the materials had been furnished, Mr. Zekind came down and asked him if plaintiffs would wait upon him for their bill until January 1, 1889. Collins

replied that they would. The bill was due December 12, 1888. Collins saw Zekind again a day or two after January 17, on which day plaintiffs had rendered him a bill of the goods furnished. Zekind came to the office of plaintiffs, and asked if they would take a mortgage on the house of Kupperness or Johnson for the amount of the bill, and Collins told him he would not. He then asked if they would take such mortgage provided he got it discounted. Collins replied that they would. Zekind said nothing leading them to believe that he in any way denied his liability for the bill. In March, Zekind told them that he meant to repudiate the bill, and they brought suit. Plaintiffs testified that they granted the credit on the strength of the lien law. They do not claim that Zekind, in so many words, promised to pay them for these materials, but impliedly did so by asking them to wait upon him until about the 1st of January.

Mr. Zekind denies that he ever promised to pay them for the materials. He says that, when he called upon them about October 1, he asked them "how the boys were paying up," and they showed by the books that $600 had been paid, and there was a balance unpaid of about $350. He then asked them if they could not wait upon Kupperness and Johnson until January 1, because it was going to press him some to pay Kupperness and Johnson, and plaintiffs said they would wait with pleasure. Kupperness testified that about this time he asked defendant for some money; and, the balance due being more than Zekind expected, Zekind said he would go down and see plaintiffs and get them to wait on him. Zekind says that he told Kupperness that he would get them to wait upon Kupperness and Johnson.

A large portion of the record is devoted to testimony, received under objection, relating to the cost of the house as built, the plan of the same, amount of extra

work done, etc., which was entirely immaterial to the issue. Such testimony would have been relevant in a suit between Kupperness and Johnson and Zekind, perhaps, upon their contract to build the house, but it had no place in this case. It is evident from all the testimony that Kupperness and Johnson contracted to build the house and furnish all the materials, and it makes no difference whether they agreed to do this for $3,400, or, as they claim, Mr. Zekind told them to go ahead and build the house, and he would do what was right. In either case there is not a *scintilla* of evidence tending to show that it was intended that he should purchase any of the materials, or that he made them his agents for such purpose. While he may be liable to them for the whole cost of the building, he could not be made liable to others for their purchases. The court was therefore radically wrong in admitting the testimony as to the cost of the house, etc., referred to above, and in submitting to the jury the proposition that, if they found Kupperness and Johnson to be the agents of the defendant in purchasing these materials of plaintiffs, the defendant should be held liable for this balance. The debt, in the first place, to plaintiffs, was undeniably, from this record, the debt of Kupperness and Johnson.

Nor do we think that defendant, by asking plaintiffs to wait upon him until January 1, 1889, could be made liable for this debt of another. Plaintiffs do not even claim that he ever expressly promised, even orally, to pay this balance, but, by requesting them to wait upon him until January 1, he impliedly promised to pay them. A large portion of this balance was furnished after he asked them to wait upon him, and there is nothing tending to show that either plaintiffs or defendant had such portion in mind when this request was made. I can find nothing in this implied promise to take it out of the statute

of frauds. The cases cited by plaintiffs' counsel, to wit: *Heyn v. O'Hagen*, 60 Mich. 150; *Loranger v. Foley*, 79 Id. 244; *Hagadorn v. Lumber Co.*, 81 Id. 56,—do not apply. There was no agency here to ratify, as in the first case above cited; nor was the debt originally the debt of the defendant, as in the other cases. Defendant asked the plaintiffs, according to their theory, to wait upon him until January 1, in October, for the payment of lumber, etc., ordered by and furnished to Kupperness and Johnson, and charged to "H. M. Zekind House. Kupperness-Johnson" upon their books. They had never given any credit to him, but relied upon payment by Kupperness and Johnson and a supposed lien upon the house. Before this request they had never thought of looking to defendant for payment, but relied principally upon the lien law of 1887, which has since been declared to be no law. *Spry Lumber Co. v. Trust Co.*, 77 Mich. 199.

The question of an estoppel is raised against the defendant, but we find nothing in the record to justify it. The plaintiffs do not show that they released Kupperness and Johnson from their liability, or lost any right against them on account of the conversation with defendant. They claim they did not proceed against the house under the lien law, however, because of such alleged implied promise on his part to pay them. When they talked with defendant it is not shown that they had taken any steps under any lien law, or that defendant ever had any reason to believe that they intended to do so. Indeed, the record and the argument of plaintiffs' counsel give the inference that proceedings under the lien law were not taken because it was supposed they had no lien that they could enforce, under the decision of this Court in the Spry case. But, even if, as one of the plaintiffs testifies, they did not proceed under the lien

law against the building because of the supposed promise of the defendant to pay them, the talk of defendant with them, upon which they ground such promise, was not sufficient in law so that they could rely upon it and build an estoppel. We do not think that the law of estoppel can be invoked, in such a case as this, to, in effect, take this promise (if there was any promise) to pay another's debt out of the statute of frauds. The circuit judge should have directed a verdict for the defendant at the close of the plaintiffs' testimony, as requested by the defendant's counsel.

The judgment will be reversed, with costs of both courts, and a new trial granted.

The other Justices concurred.