DOWNING *v.* BUCK.

1. REAL-ESTATE AGENTS—COMMISSIONS—LIABILITY OF SELLER.
   In an action by a real-estate agent to recover commissions for services alleged to have been rendered in selling land for defendant, to whom plaintiff had applied in behalf of a prospective purchaser, *held*, on a review of the evidence, that, though it appeared that plaintiff was in frequent communication with the parties, and active in the negotiations, he was not entitled to recover, as there was nothing in the circumstances from which defendant could have inferred that plaintiff was rendering services for him.

2 SAME—CUSTOM.
   The fact that, as the real-estate business is ordinarily conducted, it is the custom for the seller to pay the commission of the agent conducting the negotiations, cannot impose a liability for commissions on the seller, where all the circumstances indicated that the agent was working for the purchaser.

3. SAME—RATIFICATION—KNOWLEDGE OF FACTS.
   The owner of land who sells it through the negotiations of a

real-estate agent not authorized to act for him is not liable to
the agent for commissions on the ground of ratification of the
agency, where he did not know that the agent was working
in his behalf, and the circumstances indicated the contrary.

4. SAME—EVIDENCE—HARMLESS ERROR.
The question to the plaintiff, as a witness in his own behalf,
"As a real-estate agent, for whom were you acting in this
sale?" was properly excluded as calling for plaintiff's
undisclosed purpose; and, if admitted, it could not have
affected the duty of the court to direct a verdict for defend-
ant.

Error to Van Buren; Carr, J.   Submitted January 6,
1904.   (Docket No. 10.)   Decided February 16, 1904.

*Assumpsit* by Elmer E. Downing against Joseph S.
Buck for commissions on the sale of real estate.   From a
judgment for defendant on verdict directed by the court,
plaintiff brings error.   Affirmed.

*David Anderson*, for appellant.

*Thomas J. Cavanaugh*, for appellee.

CARPENTER, J.   In January, 1902, plaintiff was a real-
estate agent in the village of Paw Paw.   Defendant owned
320 acres of muck or swamp land in Van Buren county.
One C. G. Kleinstueck called on plaintiff for the purpose
of purchasing land of that character.   When plaintiff
and Kleinstueck were looking over the atlas, they noticed
marked thereon the parcel belonging to defendant.   The
two thereupon determined to see defendant, and arrange
a deal if they could.   They met defendant, plaintiff intro-
duced Mr. Kleinstueck to him, told him what was wanted,
and asked him if he would make the sale.   Defendant
fixed a price, and gave a verbal option for two months.
Plaintiff took Kleinstueck to the land several times, and
carried numerous communications between the parties.   He
called at defendant's house several times, and defendant
repeatedly called at his office and house to make inquiries
as to the progress of the negotiations.   Kleinstueck finally

declined the proposition made by defendant, and made a counter proposition less favorable to defendant, which plaintiff communicated, and which was subsequently accepted. Defendant took his deeds to plaintiff's office, and plaintiff at his request drew the papers and took the acknowledgment, and defendant delivered the deed to Kleinstueck and received the money for his property. Defendant knew what plaintiff's business was. There was no arrangement for Kleinstueck to pay plaintiff for his services, and he never in fact did pay for them. It is the custom of real-estate dealers to receive commission, not from the purchaser, but from the seller, of lands. After the deal was closed, plaintiff presented his account to defendant, who refused to pay the same, but shortly afterwards did offer to pay him for making out the deed. On proof of these facts, the trial court directed a verdict for the defendant.

Was this error? Plaintiff contends that this case should have been decided in his favor upon the principle that, "where a party knowingly and without objection permits another to render service for him of any kind whatever, the law implies a promise to pay what the same is reasonably worth." See *Shelton* v. *Johnson*, 40 Iowa, 84. This is a familiar and well-settled principle, but, in our judgment, it has no application whatever to this case. That principle can apply only when one knows that services are being rendered for him. There is nothing in the circumstances of this case from which defendant could have inferred that plaintiff was rendering services for him. It is true plaintiff was assisting in bringing to a head negotiations for the sale of defendant's land. But defendant could not infer that plaintiff, in assisting these negotiations, was rendering services for him. Nothing that he did, to the knowledge of the defendant, tended to induce the purchaser to buy on terms favorable to the seller. Plaintiff appeared to defendant as the representative of the purchaser. He communicated to defendant the purchaser's objections to the land. He obtained defendant's

consent to sell the land on terms less favorable than those contained in the original option. Surely defendant could not have inferred that services of this character were being rendered for him.

Nor do we think that plaintiff's case is aided by the evidence of custom. Several witnesses testified respecting this custom. None of their testimony is stronger than that of plaintiff himself. We quote his testimony:

" *Q.* What is the custom in the real-estate business as to whether the purchaser or the seller of the real estate pays the commission?

"*A.* Well, the man that sells the property."

The custom proved by this testimony—a custom so common that perhaps we may know it judicially—is that, as the real-estate business is ordinarily conducted, the seller, and not the purchaser, pays the commissions of the agent. The custom which governs ordinary real-estate transactions has no application to the exceptional case before us. Because in ordinary transactions the seller of real estate pays the agent, no obligation to pay will be presumed where, as in this case, all the circumstances indicate that he is working for the purchaser.

It is urged by plaintiff that, if defendant was not bound in the first instance to compensate him for his services, he ratified those services, and thereby rendered himself liable for their value, when he consummated the sale. The doctrine by which one by ratification becomes responsible for the act of an unauthorized agent is usually applied to render the principal liable, not to the agent whose act was unauthorized, but to the person with whom the agent dealt. Assuming that the agent can invoke the docrine of ratification,—and it is held that he may (see *Wilson* v. *Dame,* 58 N. H. 392),—its application will not aid plaintiff in this case. The ground upon which it is claimed that defendant ratified plaintiff's agency is that he accepted the benefits of that agency.

"Ratification of an unauthorized contract, in order to be made effectual and obligatory upon the alleged princi-

pal, must be shown to have been made by him with a full knowledge of all the material facts connected with the transaction to which it relates." Mechem, Agency, § 129.

See, also, the numerous cases there cited in support of this doctrine. It results, therefore, that the fact heretofore pointed out, that defendant did not know, when he consummated the sale, that plaintiff had rendered services for him, makes the doctrine of ratification inapplicable.

Complaint is made because the court refused to permit plaintiff to answer this question: "As a real-estate agent, for whom were you acting in this sale?" We think the question did not call for a statement of fact, as did similar questions in *Sweet* v. *Tuttle*, 14 N. Y. 465, and *Knapp* v. *Smith*, 27 N. Y. 277, relied upon by plaintiff. We think, under the circumstances of this case, the question called for a statement of plaintiff's undisclosed purpose, and that it was therefore inadmissible. Even if the court erred in excluding this testimony, it was not prejudicial error. Had plaintiff answered this question in the manner desired by his counsel, under the reasoning of this opinion it would have been none the less the duty of the court to direct a verdict against him.

The judgment of the court below will be affirmed.

The other Justices concurred.