ROOT & McBRIDE CO. *v.* WALTON SALT ASS'N.[1]

1. PLEADING — VARIANCE — JOINT CONTRACTORS — AMENDMENT — COURT RULES.

   Plaintiff declared in assumpsit against two defendants on a contract made by them jointly, but, before offering any evidence, stated that the two defendants did not contract with him, but that one or the other of them did, and wished the jury to say which. The proof showed that one of the defendants made the identical contract declared on, and judgment was rendered against him. *Held*, that the procedure was authorized by Cir. Ct. Rule 27 *b*.

---

[1] Rehearing denied January 23, 1906.

2. SALES—CONTRACT—EVIDENCE.

> In an action for the price of salt bags, it appeared that the
> bags were ordered by a sales agent on the credit of the man-
> ufacturer pursuant to a prospective arrangement known to
> the seller, whereby the agent was to handle the entire output
> of the manufacturer, the manufacturer furnishing the bags.
> The bags were retained until after the negotiations with the
> agent fell through, when the manufacturer informed the
> seller that the bags would not be wanted. *Held*, that the
> manufacturer was liable.

Error to Wayne; Frazer, J. Submitted April 12,
1905. (Docket No. 63.) Decided June 8, 1905.

Assumpsit by the Root & McBride Company against the
Walton Salt Association, Limited, and the G. N. Skinner
Salt Company for goods sold and delivered. There was
judgment for plaintiff against the Walton Salt Associa-
tion, and said defendant brings error. Affirmed.

*Frank E. Robson*, for appellant.

*Bowen, Douglas, Whiting & Murfin*, for appellee.

HOOKER, J. The plaintiff sued the Walton Salt Asso-
ciation, Limited, and the G. N. Skinner Salt Company,
for the purchase price of $1,800 worth of salt bags. The
declaration was the common counts, accompanied by a
bill of particulars. The testimony shows an order for
bags dated April 22, 1902, signed, "Walton Salt Associa-
tion, Ltd. Angus Smith," shipment to be made to the
"Walton Salt Association, Ltd." A second order, dated
June 20, 1902, signed G. N. Skinner, directing goods or-
dered therein to be shipped to G. N. Skinner Salt Com-
pany, Detroit, and charged to Walton Salt Association,
was also shown. Upon the trial the plaintiff, through its
attorney, disavowed any claim that there was a joint lia-
bility by the defendants, but claimed that one or the other
was liable, and asked that it be left to the jury to deter-
mine which was its debtor. It seems to have relied upon its
claim against the Walton Salt Association, asserting that

the bags were ordered for, delivered to, and used by it or its agent, Skinner, in and about its business, in pursuance of an arrangement between them whereby Skinner or the Skinner Salt Company was to handle the entire output of salt that should be manufactured by the Walton Salt Association.

At the close of the testimony the defendant asked the court to direct a verdict against the plaintiff, but the case was left to the jury upon three theories:

1. That the Walton Salt Association had contracted to pay for the bags.

2. That it had led plaintiff to believe that Skinner was its agent authorized to order bags for it.

3. That there was a custom of the trade or parties under which the Walton Salt Association would be chargeable with the bags.

The defendant has appealed from a judgment for the plaintiff. Defendant contends:

1. That there was a misjoinder of defendants, which entitled it to a verdict.

2. There was neither contract authorizing a purchase of the bags on the account of the Walton Salt Association, nor a ratification of such purchase.

3. There was no proof of a custom of the trade binding upon the Walton Salt Association, and such a custom, if proved, would be unreasonable and void.

The declaration, in form, charges a joint contract. To prove it, evidence was required showing that the two defendants, upon the one part, made a joint contract with the plaintiff, upon the other. Before any proof was offered, the plaintiff's counsel abandoned such a claim; saying that the two defendants did not contract with him, but one or the other of these defendants was the contracting party, and he did not know which, and wished to leave the question which one was liable to the jury. In other words, he admitted that, knowing that only one person had made a contract, he had joined two, alleging a joint contract, relying on Cir. Ct. Rule 27 as authority for the practice. Alleging a joint contract, though he knew it

was not joint, he seeks to prove a contract in terms several, against one or the other of two persons, without change in his declaration; leaving the jury to say which of the two made the contract. Had he set up the true situation in his declaration, he should have alleged a several contract, in the alternative, or joined two counts; one alleging a contract by one, and the other by his codefendant. That either course would have been anomalous, if not bad, pleading, under any known rules, is manifest. Subdivision *b* of Cir. Ct. Rule 27 is not new, having existed a long time as Rule 71. Under it, one who had alleged a joint contract against two or more might " discontinue against any of them," and might " amend his declaration and proceed against the other defendants," etc. To do this he found it necessary to charge a different contract, either by alleging a several contract against the one remaining defendant, or by alleging a different joint contract if more than one defendant remained. No violence was done to established rules of pleading by this practice, for it left the right to remaining defendants to make any defense they might please, even though their default had been already entered. See *Munn* v. *Haynes*, 46 Mich. 140; *Codd* v. *Seitz*, 94 Mich. 193, and cases cited. The rule as construed in *Durgin* v. *Smith,* 115 Mich. 239, *Wright* v. *Reinelt,* 118 Mich. 639, and *Mc-Pherson* v. *Pinch,* 119 Mich. 36, has the effect of allowing a jury to disregard the fact of a misjoinder of defendants where the proof shows that the contract alleged was made jointly by all of the other defendants, and to render a verdict against those who did make it or who remain liable upon it; apparently disregarding the fact that the proofs constitute a technical variance from the declaration. Whether the plaintiff in this case knew when the declaration was filed that this was not a joint obligation, and, if he did not, when he discovered the fact, is not apparent, and perhaps it makes no difference whether his allegation of joint liability was made in good faith or not. The record shows such a claim, while the proofs and admissions show

that one of the defendants did not make the contract, and that the other did make identically such a contract. The rule as interpreted covers such a case, and the worst that can be said about it is that an error in naming parties to the contract is disregarded.

The evidence shows that one of the orders was made by the defendant association at an interview between Smith, the secretary of the Walton Salt Association, Skinner, and plaintiff's agent Gollier, on April 22, 1902, but it provided that it should be canceled in case plaintiff could not furnish a "Bates Valve Bag Machine" by June 1, 1902. The machine was not furnished, and the bags were sent to the Walton Salt Association after that date. There is little dispute, however, that the bags were received upon both orders, and retained by the Walton Salt Association until its negotiations with Skinner came to an end, when it was determined by the association that it did not want the bags. That it knew that the plaintiff expected to furnish these bags upon Skinner's order, but upon its credit, is legitimately inferable from the proofs; and the court would have been justified in so stating to the jury, for there is no evidence to the contrary. It is therefore unimportant that the court allowed the doubtful question of custom to go to the jury, inasmuch as the testimony as conclusively shows that it received and kept the goods for a long time, and until it found it would have no use for them, by reason of the failure of its negotiations with Skinner. As late as June 7th it received a letter and some sample bags, and on June 27th sent plaintiff some salt to use in determining the size of bags, and later all of the bags were received by it; and not until November 7th did it inform plaintiff that they were held subject to its order. It is true that there was testimony that the Walton Association informed Skinner that it had received, but would not accept, bags, but this did not discharge its duty toward the plaintiff of notifying it if it intended to rely upon its alleged cancellation of the first order.

To recapitulate: We are of the opinion that the undis-

puted evidence shows that the Walton Salt Association was to furnish the bags for its salt, and that it gave one order, and recognized the validity of the second when it was given; also that the plaintiff had a right to understand that it did so, from the conversation with Gollier, taken in connection with its conduct in relation to the bags, which were shipped, and its failure to inform it that it did not wish to receive the bags sent.

The judgment is affirmed.

MOORE, C. J., and CARPENTER, MCALVAY, and OSTRANDER, JJ., concurred.