## HILLMAN *v.* HULETT.

1. PRINCIPAL AND AGENT — REPRESENTATION BY AGENT. — UNAU-
THORIZED ACTS—RATIFICATION.

A telegram from the chief officer of a Nevada lodge of Odd
Fellows, addressed to defendant's wife, announcing the death
of her father, was delivered to defendant, who authorized the
telegraph operator to have the body shipped at his expense.
The Michigan lodge, of which deceased was a member, on re-
ceipt of a similar telegram, sent a telegram to the Nevada
lodge, without consulting defendant, guaranteeing the
charges. On learning of the action of the lodge, before
arrival of the body, defendant stated to members that the
charges would be paid. *Held*, that defendant ratified the
unauthorized act of the lodge and made himself liable for the
guaranteed charges. BLAIR, MONTGOMERY, and HOOKER, JJ.,
dissenting.

2. SAME—UNDISCLOSED PRINCIPAL—LIABILITY.

Plaintiff, the undertaker, who prepared and shipped the body
upon the order of the Nevada lodge, which in turn looked to
the Michigan lodge, was justified in holding defendant respon-
sible as the undisclosed principal for whom both the lodges
acted. BLAIR, MONTGOMERY, and HOOKER, JJ., dissenting.

3. SALES—ACTION FOR PRICE—VALUE—EVIDENCE.

Testimony by plaintiff, in support of his bill of particulars stat-
ing the items and price of goods furnished to defendant, that
he furnished such items, and "charged" the affixed price
therefor, is sufficient, in the absence of specific objection
during the taking of the testimony, to support a finding that
the value of the goods was as claimed. BLAIR, MONTGOMERY,
and HOOKER, JJ., dissenting.

4. JUSTICES OF THE PEACE — ACTIONS — PARTIES — JOINT DEFEND-
ANTS—SEVERAL CONTRACTS.

Act No. 137, Pub. Acts 1903, makes the practice in justice's
court conform to that prescribed for circuit courts by Cir-
cuit Court Rule No. 27c, and authorizes the plaintiff, on
appeal from justice's court, to discontinue as to one or more
joint defendants and take judgment against those remain-
ing.

149 MICH.—19.

5. STATUTE OF FRAUDS — PROMISE TO PAY DEBT OF ANOTHER—
   ORIGINAL PROMISE—APPLICATION OF STATUTE.
   On delivery to defendant of a telegram addressed to his wife
      announcing the death of her father, defendant orally author-
      ized the telegraph operator to have the body shipped at his
      expense. The reply telegram ordering shipment was sent in
      the name of the wife, and the body shipped to her. *Held*,
      that defendant's undertaking was a pledging of his own
      credit on his own behalf, and was not a promise to pay the
      debt of his wife, and that it was therefore not void under the
      statute of frauds (section 9515, 3 Comp. Laws) because not in
      writing.

Error to Macomb; Tucker, J. Submitted February
15, 1907. (Docket No. 32.) Decided July 15, 1907.

Assumpsit by W. S. Hillman against Bert Hulett and
Allie Hulett for goods sold and delivered. There was
judgment for plaintiff, and defendant Bert Hulett brings
error. Affirmed.

*William T. Hosner* (*Byron R. Erskine*, of counsel),
for appellant.

*Seymour H. Person*, for appellee.

CARPENTER, J. Plaintiff is an undertaker in Tusca-
rora, Nev. He brings this suit to recover for a casket
and shipping box in which the body of one L. F. Harris,
the father of defendant Allie and father-in-law of defend-
ant Bert, was shipped from Tuscarora, Nev., to Armada,
Mich. The suit was tried before the court, who made a
finding of facts and rendered judgment in favor of plain-
tiff and against both defendants (who are husband and
wife). Defendant Bert alone appeals, and asks a re-
versal of that judgment upon four grounds:

(1) There is no testimony tending to establish his lia-
bility.
(2) There was no evidence tending to prove the value
of the goods furnished by plaintiff or the reasonableness of
his charges.

(3) Appellant's liability—if he is liable at all—is a several liability, and it cannot be enforced in this suit where he and his wife are sued jointly.

(4) Appellant's alleged agreement was "a special promise to answer for the debt of another," and was therefore void, because not in writing, as required by section 9515, 3 Comp. Laws.

Each of these grounds will be separately considered.

1. Was there testimony tending to establish appellant's liability? In determining this question we should and do state the testimony most favorably to plaintiff. Harris, the deceased, was a member of the Armada Lodge of Odd Fellows. In Tuscarora he affiliated with the Tuscarora Lodge of Odd Fellows. The Tuscarora Lodge looked after him during his last illness, and, when he died, its chief officer telegraphed notice of that fact to defendant Allie and to the Armada Lodge. The telegram to defendant Allie was delivered to appellant Bert, and he thereupon authorized the telegraph operator to have the body shipped to Armada at his expense. The operator sent this dispatch in the name, not of appellant Bert, but of defendant Allie. Very soon thereafter the operator, who was secretary of the Armada Lodge of Odd Fellows, notified other officers of that lodge that appellant Bert had ordered the body shipped at his expense, and the chief officer of that lodge also sent a telegram guaranteeing the charges of shipment. This was done without consultation with appellant Bert, but as an act of kindness to him and upon the assumption that he would pay the expenses which it guaranteed. Before the body arrived, appellant Bert learned of the action taken by the lodge, and he said that the charges would be paid. The two telegrams, viz., the one sent by appellant Bert in the name of defendant Allie, and the one sent by the Armada Lodge, were duly received by the chief officer of the Tuscarora Lodge of Odd Fellows, who directed plaintiff to prepare the body for shipment and to ship it. The trial judge found that "the shipment was undoubtedly made

and the other expense incurred upon the faith of the Tuscarora Lodge, who in turn looked to the Armada Lodge." The Armada Lodge, it appears from the foregoing facts, was acting for and in behalf—that is, as the agent—of appellant Bert Hulett. It is true that it had no authority to so act, but, by the conduct above stated, appellant ratified its action and made himself liable therefor. Mechem on Agency, § 157; *Heyn* v. *O'Hagen*, 60 Mich. 157. I think the foregoing facts justified the plaintiff in holding appellant responsible as the undisclosed principal for whom both the Armada and the Tuscarora Lodge acted. We are therefore bound to say that there was testimony tending to establish appellant's liability.

2. Was there evidence tending to prove the value of the goods furnished by plaintiff? Plaintiff's bill is as follows:

Metallic lined casket and trimming _____ $125 00
Shipping box, embalming fluid, etc. _____   12 00
                                                   _____
                                                   $137 00

Upon this bill was credited $20, cash paid, leaving a balance of $117. Respecting this bill, plaintiff's deposition contained the following testimony:

"*Q.* Did you prepare Mr. Harris' body for shipment home, and did you furnish casket, etc., for that purpose?
"*A.* Yes, I did.
"*Q.* What were your charges for the services, casket, etc., in such matter?
"*A.* One hundred and thirty-seven dollars."

The point is now made that the foregoing furnishes evidence of plaintiff's "charge" for the articles furnished, but not of their actual "value." This point assumes that the charges testified to by plaintiff had no relation to value. This is placing upon that testimony a narrow and extremely technical construction. If this construction had been insisted upon during the taking of testimony, when plaintiff could have supplied the needed testimony, it is possible the court might have approved it. But it

was not then insisted upon. Indeed, the point was not made until the testimony was all taken and the cause submitted. Under these circumstances, it may properly be held that defendant has acquiesced in placing upon that testimony the construction that plaintiff obviously intended should be placed upon it. It is clear that in giving this testimony the plaintiff intended to furnish evidence of the amount of defendant's liability. He intended that from this testimony the court should infer not only that $137 was the *amount charged,* but that that amount was *properly charged* (and perhaps this inference is just. *Ducoign* v. *Schreppel,* 1 Yeates [Pa.], 347). This intention was obvious, and defendant's counsel was bound to know it. Unless he acquiesced, it was his duty to speak. He did not speak; nor was anything done, either by him or defendant, his client, to indicate his non-acquiescence. I submit that there was nothing in the testimony of Mr. Hulett, the defendant, quoted by my Brother BLAIR, to indicate his belief that the amount charged by plaintiff did not afford evidence of value. Under these circumstances, plaintiff had the right to assume that defendant's counsel consented to this construction of the testimony, and it is to be presumed that he acted upon this assumption when he submitted his case. To thereafter permit defendant to contend that he did not acquiesce in this construction is to permit him to perpetrate an injustice. I think it is our duty to hold that defendant is estopped from insisting that the construction plaintiff placed on this testimony was not the proper construction, and, therefore, that there was evidence of the value of the articles sued for. The circumstance that the charge of perjury would not lie on this testimony is immaterial. By the concession of counsel courts often act upon testimony which is not under oath. In my judgment, this is such a case. I submit that the principle applied in construing this testimony is not a novel one. It is construed in accordance with the intention of the parties.

3. Can the defendant's liability be enforced in this suit wherein he and his wife are sued jointly? The point to this objection is not that there has in fact been a joint judgment rendered against defendant and his wife — probably this point is not made, because defendant was not thereby prejudiced—but it is, to quote from defendant's brief, "plaintiff cannot sue jointly on several promises made by different parties." This is precisely what he is permitted to do, in cases *commenced* in the circuit court, by Circuit Court Rule No. 27, subd. *c*, as construed by this court. See *McPherson* v. *Pinch,* 119 Mich. 36; *Durgin* v. *Smith,* 115 Mich. 239; *Root & McBride Co.* v. *Walton Salt Ass'n,* 140 Mich. 441. But as this case originated in justice's court, the question arises whether the rule above referred to is applicable. In *Wright* v. *Reinelt,* 118 Mich. 638, decided in 1898, we held that it did not apply in such cases, citing as authority therefor *Anderson* v. *Robinson,* 38 Mich. 407. In *Anderson* v. *Robinson,* the plaintiff was denied the right given by subdivision *b* of Circuit Court Rule No. 27 (at that time Rule No. 71) to discontinue against one of two defendants, who had appealed to the circuit court from a joint judgment rendered by a justice upon the ground that " the appeal contests the liability asserted in the court of original jurisdiction, and if a joint one, the appellee has no power to change it into an individual liability in the appellate court against the consent of the appellant;" and the court added: "A contrary course would lead to strange and unjust results." Since these decisions were rendered the legislature has, by Act No. 137 of the Public Acts of 1903 (this is an amendment of Act No. 199, Pub. Acts 1899), made the practice in justice's court conform to that prescribed in subdivision *c* of Rule No. 27 for the circuit court. Said Act No. 137 also provides:

" In case the defendants, or any two or more of them, shall take any cause where they are joint defendants by appeal to the circuit court from the justice court, and

shall file a bond on appeal, and, on the trial in the circuit court, a verdict shall be rendered for one or more of such defendants so appealing, the surety or sureties on such appeal bond shall not be released from his or their liability on such bond by reason of such verdict, but judgment shall enter against said surety or sureties as well as against the defendant or defendants against whom verdict is rendered on such trial in the circuit court."

It seems to us very clear that the purpose of this act was to place cases appealed from justice's court—as to the right of plaintiff to hold one of several defendants liable on his separate contract—on precisely the same footing as cases commenced in the circuit court; and we also think that this statute removes the objections to that practice referred to in *Anderson* v. *Robinson,* supra. This conclusion is in harmony with the decision of *Wilson* v. *Medler,* 140 Mich. 209.

4. Was defendant's promise void, because not in writing? The claim that it is, assumes that it was a promise to pay the debt of his wife. This assumption is unfounded. According to the testimony of the messenger who delivered the telegram—and this testimony appears to have been credited by the trial judge—defendant made himself primarily liable. His was not, therefore, a promise to pay the debt of another, and the statute (section 9515, 3 Comp. Laws) relied on by his counsel does not apply.

In my opinion, the judgment should be affirmed.

McALVAY, C. J., and GRANT, OSTRANDER, and MOORE, JJ., concurred with CARPENTER, J.

BLAIR, J. (*dissenting*). Plaintiff, an undertaker, of Tuscarora, Nev., brought this suit to recover a balance alleged to be due from defendants for coffin, services, etc., furnished and rendered in preparing the body of L. F. Harris, the father of defendant Allie Hulett, for shipment from Tuscarora to Armada, Macomb county, Mich., for burial. Upon the death of Mr. Harris, J. E. Douglass, noble grand of a Tuscarora Lodge of Odd Fellows,

sent the following telegrams and received the following replies, viz.:

"TUSCARORA, NEVADA, November 27th.
"Mrs. ALICE HULETT, Armada, Mich.
"Mr. L. H. Harris, your father, died here this morning at seven o'clock. How do you wish the remains disposed of? If buried here, send age and place of birth.
"J. E. DOUGLASS."

"TUSCARORA, NEVADA, November 27th, 1902.
"ARMADA LODGE NUMBER 492, I. O. O. F.,
"Armada, Mich.
"Mr. L. H. Harris, of your lodge is dead. Telegraph instructions.
"J. E. DOUGLASS,
"N. G., Number 30, I. O. O. F."

"ARMADA, MICH., November 27th, 1902.
"To J. E. DOUGLASS, Tuscarora, Nevada.
"Send remains of L. H. Harris here. Charges guaranteed.
"Mrs. ALICE HULETT."

"ARMADA, MICH., November 27th, 1902.
"J. E. DOUGLASS,
"N. G., Number 30, I. O. O. F.,
"Tuscarora, Nevada.
"Send remains of Brother Harris here; charges guaranteed.
"BURTON HODGES, N. G."

The telegram from Mrs. Hulett was sent at 5:47 p. m., and the telegram signed "Burton Hodges" was sent at 7:55 p. m., November 27th. Mr. Wilder, the operator who sent and received the messages, was secretary of Armada Lodge. He sent the message to Mrs. Hulett, who lived in the country, by a Mr. Knickerbocker, who delivered it to Mr. Hulett. Knickerbocker reported: "Hulett instructed him to send a message to have the body forwarded," and "that he would pay the charges;" he said, "Have Mr. Wilder have them forward the body on at my expense." After sending the Hulett telegram, Mr. Wilder saw Dr. Hodges and reported the facts to him and other lodge members on the street, and the lodge

telegram was sent to guarantee payment by Mr. Hulett. Mr. Hulett knew nothing about the sending of the telegram by Dr. Hodges until the next day. The plaintiff testified:

"*Q.* Who called you to attend the body of Mr. Harris and prepare it for burial?

"*A.* J. E. Douglass, as N. G. of Tuscarora Lodge, No. 30, I. O. O. F.

"*Q.* What was the arrangement made as to your services, casket, etc.?

"*A.* I was directed to do this work by Mr. J. E. Douglass. * * *

"*Q.* What was your charge for the services, casket, etc., in such matter?

"*A.* One hundred and thirty-seven dollars.

"*Q.* What amount has been paid you on that bill and by whom was it paid for you?

"*A.* Twenty dollars by Mr. J. E. Douglass. * * *

"*Q.* On what responsibility then did you do this work and furnish the casket, etc.?

"*A.* On the responsibility of the telegram received by Mr. J. E. Douglass from Armada Lodge, I. O. O. F., directing the shipment of the body home."

Mr. Douglass, noble grand of the Tuscarora Lodge, testified:

"I stated the purport of those telegrams to Mr. W. S. Hillman.

"*Q.* Upon what telegram or telegrams received by you was the responsibility taken of ordering the body of Mr. Harris prepared for shipment and there shipped?

"*A.* On telegram from Armada Lodge.

"*Q.* Who ordered Mr. Harris' body prepared and then sent to his home?

"*A.* I did, on the strength of telegrams from Armada Lodge.

"*Q.* To whom was such order given?

"*A.* To W. S. Hillman."

The body of Mr. Harris was shipped by express, charges prepaid, to Mrs. Hulett, and the bill was made out to her. Mr. Hulett paid to the Armada Lodge $100 received by Mrs. Hulett from a miners' union, and the lodge paid $30

on the funeral expenses by an order drawn in favor of Mrs. Hulett. Statements of Mr. Hulett to witnesses at Armada were put in evidence, tending to prove that he recognized the indebtedness as his. Mr. Hulett claimed that in all that he did he was acting for his wife and not in his own behalf.

Among others, the circuit judge made the following findings:

"No credit was ever extended by the plaintiff to either of the Huletts, nor did he know them. The shipment was undoubtedly made and the other expense incurred upon the faith of the Tuscarora Lodge, who in turn looked to the Armada Lodge. But this would not preclude the plaintiff from bringing suit and recovering against any one actually liable. The expense was incurred directly upon the personal order of Bert Hulett.

" So far as the question of agency between husband and wife is concerned, I have no doubt but that, where a husband orders funeral arrangements made for a wife's deceased father, he is to be held personally liable unless it affirmatively appears that all parties were informed distinctly that he was acting merely as his wife's agent and did not intend to become personally responsible.

" In my opinion, neither the doctrine of estoppel nor the statute of frauds is involved in this case at all.

" I have carefully examined all the briefs submitted to me, and can come to no other conclusion than that both the defendants are liable."

Plaintiff's counsel contend:

" These facts present a simple case of agency, and the fact that Hulett, as principal, was not disclosed until after the services were performed and the body shipped, does not prevent a recovery from him, when it is learned that he was the undisclosed principal who authorized the expenditure and received the benefit of the services.

" The undertaker knew, through the Tuscarora Lodge, that he was acting for a Michigan family in sending a dead father home.

" The name of the head of that family he did not know, but the wife and local lodge had telegraphed that the charges would be paid, and on the strength of these telegrams plaintiff acted. We have now shown that appel-

lant was the head of that family; that he authorized the expenditure through his own agents; that both Wilder and the Tuscarora Lodge were his agents; we have traced the services and the casket to him, and know he used them, and have done all that is required of us to recover against him for such services and goods.

"Not only did defendant Hulett expressly authorize the incurring of these expenses, but he has since ratified them by his conduct, and is now estopped from denying his liability."

It is clear that no contract relations existed between the defendant Bert Hulett and the plaintiff. Neither did any contract relations exist between Bert Hulett and the lodge at Tuscarora or at Armada. So far as the Armada Lodge was concerned, he did not request it to guarantee payment of the charges, nor did he know that it had done so until afterwards. He did not communicate to the lodge his action nor authorize the telegraph operator to do so, and the most that can be claimed is that he ratified the action of the lodge after he learned of it. The operator was not the agent or representative of Mr. Hulett, and had no power to bind him; he was merely the messenger to transmit the message sent to the Tuscarora lodge. Neither was the operator the agent of the plaintiff or the Tuscarora Lodge, and anything said to him through Knickerbocker was of no avail to confer any rights upon the plaintiff except as transmitted to the plaintiff and acted upon by the plaintiff. This was not a transaction with an undisclosed principal. The principal was disclosed by the telegram. Plaintiff understood that Mrs. Hulett was the principal; he made out his bill to her, and the body was shipped in her name. Both of the telegrams were stated to plaintiff, and he rendered the services and furnished the coffin, etc., as held by the court, upon the faith of Tuscarora Lodge, which was his employer, and which, in turn, relied upon Armada Lodge. I do not think that it can be said, " The expense was incurred directly upon the personal order of Bert Hulett," so far as the plaintiff is concerned. The expense was in-

curred directly upon the order of Tuscarora Lodge, guaranteed by Armada Lodge. Mrs. Hulett was liable, because her name was properly signed to the telegram by her authority, and because she actually did order the shipment, to the knowledge of the plaintiff. So far as the plaintiff was concerned, he was in no wise deceived or misled; he acted upon the facts as they were presented to him by telegrams, which spoke for themselves and could not be misunderstood. In order for the doctrine of undisclosed principal to apply, some one must have assumed to act as agent. There was no such situation here. Armada Lodge never assumed to act as agent for Hulett; they guaranteed payment. To hold otherwise, requires the postulate of an undisclosed agent as well as an undisclosed principal. In the case of *Heyn* v. *O'Hagen*, 60 Mich. 150, the shoemaker who ordered the goods represented to the seller that he was the agent of the defendant, and the court held that the defendant, by his conduct, ratified the representation. In the present case, Armada Lodge never represented itself, either expressly or by implication, as the agent of the defendant Mr. Hulett, and the goods were not furnished in reliance upon his responsibility. The case is not an authority for the alleged ratification in this case. It, therefore, follows that the plaintiff cannot recover in this case upon the basis of express contract, but only, if at all, upon the basis of an implied contract to pay for materials furnished and services rendered for defendant's benefit and accepted by him.  9 Cyc. p. 254 (III); *Litchfield* v. *Garratt*, 10 Mich. 426; *Turner* v. *McCarty*, 22 Mich. 265; *Wheeler* v. *Stewart*, 94 Mich. 445; *Bailey* v. *Rutjes*, 86 N. C. 517.

This case is the converse of *Downing* v. *Buck*, 135 Mich. 636. In that case the defendant did not know that the plaintiff was rendering services for him, and it was therefore held that he was not liable for such services. In this case the plaintiff did not know that he was rendering services for the defendant Bert Hulett, but plain-

tiff's proofs tended to show that the defendant intended that the services should be rendered for him, directed the telegraph operator to wire that the body should be sent at his expense, arranged with another to pay the charges even to the amount of $280, if the body arrived when he was not at the station, made payments on the bill without objection, except as to the amount, and throughout recognized the liability as his, and appropriated and received the benefit of the plaintiff's services and property furnished. Under such circumstances, a finding that Hulett was really acting in his own behalf would be supported by evidence, and he might properly be held liable for the value of the articles furnished and services performed. On the other hand, if it were found that Hulett was really acting for his wife, as he claimed, he would not be liable.

It is contended by defendant's counsel that there was no evidence of the value of the articles furnished or services rendered, and that for this reason a judgment should have been rendered in his favor. Upon this point, the court said:

"The proofs show that Mr. Harris died; that his body was prepared for burial by the plaintiff; that it was shipped to Armada in a casket furnished by him; it arrived there and was buried in the casket provided by the plaintiff; it is, I take it, practically undisputed that all the services charged for were furnished. Defendants saw and had opportunity to inspect the materials, quality, etc., of the goods provided. These facts, in connection with the deposition of W. S. Hillman, it seems to me, sufficiently cover the ground."

The only testimony upon the question of value was that of the plaintiff, above quoted, that his "charge, for the services, casket, etc.," was $137, and the following from the testimony of Mr. Hulett:

"*Q.* What is the balance due at the present time?
"*A.* I believe that it is a hundred seventeen dollars and a half.
"*Q.* That is the correct amount due on the account?
"*A.* That is what they claim on it."

We do not think there was any competent evidence of the value of the services or materials furnished. The word "charge" is not synonymous with "value." Under his testimony in this case, plaintiff could not be convicted of perjury if it should turn out that there was a gross overcharge. Defendant, if liable, could only be held for the value of the services and materials which he appropriated, and not for any fancy sum which plaintiff saw fit to charge. We think it manifest that defendant did not intend to admit that there was any specific sum due, but simply that a certain balance was claimed to be due. The case of *Ducoign* v. *Schreppel*, 1 Yeates (Pa.), 347, holds that a day book is prima facie evidence, not only of the delivery of goods, but of their prices. It is said in the short per curiam opinion:

" How else could the prices of broadcloths, linen, cambric, etc., of different degrees of fineness, be ascertained after a length of time? A contrary doctrine would render our usage of small advantage to the mercantile or mechanical part of the community. * * *
" The necessity of the case, however, which gave birth to our practice in this particular, by no means warrants that entries in day books should be considered as evidence of money lent or cash paid."

I do not think this case is in point. Books of account are only admissible upon proof of their correctness, and, if the case cited holds to the contrary, which I do not understand to be the case, it would be contrary to numerous decisions of this court. *Cameron Lumber Co.* v. *Somerville*, 129 Mich. 552. In my opinion, the case of *Farrington* v. *Wright*, 1 Minn. 241, is directly in point as to the construction which should be given to the plaintiff's testimony. In that case, the defendant in his answer admitted all of the material allegations of the complaint, but alleged by way of counterclaim that "the defendant charged for his commissions thereon twenty-five dollars, leaving a balance of $268 in favor of the plaintiff." The court say:

" The counterclaim for commissions is not adequately

alleged in the answer to make it available to the defend-
ant below. The allegation is that he 'charged twenty-
five dollars for his commission.' He does not allege that
the charge was true, or that the services for which he
made the charge were worth that or any other sum. In
verifying the answer, he, in effect, only swears that he
charged that sum, and not that the charge itself was true
or just. I do not think that the allegation is sufficient to
admit proof to sustain a claim of twenty-five dollars or
any less sum for commissions. The existence of such a
claim is not alleged, nor can it be implied from the state-
ment that he charged it. Proof that he made the charge,
which is all that is alleged, would not alone sustain a
claim for the amount charged, or any less sum. Proof of
other facts, not alleged, would be required to resolve the
charge into a valid legal claim."

The testimony of the plaintiff was taken by deposition,
apparently at Tuscarora, Nevada, and there does not seem
to have been any cross-examination. If the value of "the
services, casket, etc.," for which the plaintiff's "charge"
was $137, had been known to him to have been only $50,
an indictment for perjury could not have been maintained
upon this testimony, because, as said by the supreme court
of Minnesota, "he does not allege (swear) that the charge
is true or that the services for which he made the charge
were worth that or any other sum."

Neither do I think it ought to be held that the defend-
ant acquiesced in a supposed erroneous construction by
plaintiff's counsel of the effect of his testimony. I know
of no rule of law which requires defendant's counsel, dur-
ing the course of the trial, to inform plaintiff's counsel
that, although he thinks he has proved his case, he has
failed to do so. Defendant's plea put every material fact
in issue. The burden of proof was upon the plaintiff to
establish every material fact by at least prima facie evi-
dence. He failed to do so, and the defendant was, I
think, within his legal rights in raising the question as he
did at the close of the case. At the close of the testimony,
the record contains the following:

"And after such testimony was given, the cause was

submitted to the said court for decision without oral arguments, but upon written briefs, in which said briefs counsel for defendants, among other things, raised the objection to there being no proof made of the value of the labor and materials for which recovery was sought in this case."

I think also that the testimony of Mr. Hulett on cross-examination was notice to plaintiff's counsel that he did not intend to admit that the balance claimed to be due was correct. He testified:

"*Q.* What is the balance due at the present time?

"*A.* I believe that it is a hundred seventeen dollars and a half.

"*Q.* That is the correct amount due on the account?

"*A.* That is what they claim on it."

Until the plaintiff put in some evidence of the value of the services and materials, defendant was not called upon to produce testimony upon that subject.

The judgment should be reversed as to the defendant Bert Hulett, and new trial granted.

MONTGOMERY and HOOKER, JJ., concurred with BLAIR, J.