## MANN v. DAY.

1. TRUSTS—DEVELOPMENT EXPENSE—LIABILITY OF TRUSTEE — AC-COUNTING.

   Where a trust estate has among its assets an indebtedness from a mining company in which the beneficiaries are interested, and all of them consent in advance to the expenditure of money in developing the mine, they cannot hold the trustee liable to an accounting for the money so expended.

2. SAME—EXPENSES—LIABILITY OF ESTATE.

   A trust estate is chargeable with the expense of administering the trust, where the contract with a trustee does not provide that he shall bear them, and with the *pro rata* share of expenses in investigating and looking after property held in common with others after creation of the trust.

3. SAME.

   A trustee is entitled, on an accounting, to credit for money paid in satisfaction of a claim of a purchaser of land from the trust estate, due to failure of title.

4. SAME—ACCOUNTING—SURCHARGING TRUSTEE.

   Where the beneficiaries of a trust estate join in a writing authorizing the trustee to sell their interest in land at a certain price, and it is the best price attainable, the trustee cannot be surcharged, on an accounting, with the difference between the price obtained and a price nearly double, because of the mere fact that a single tract of land in a better location sold for the latter price.

5. SAME—GENERAL OBJECTION—APPEAL AND ERROR.

   A general objection to a trustee's account will not be considered on appeal.

6. SAME—ACCOUNTING—EXPENSES.

   On an accounting by a trustee, the beneficiaries of the trust estate cannot complain of the purchase by the trustee of claims of squatters to land of the trust estate without litigation where a report as to any money used for such purpose was made to the beneficiaries and with their acquiescence deducted from their share on the distributions that were had.

7. SAME.

A trustee should not be penalized for settling a claim, which, in the exercise of good business judgment, he deemed it wise to settle, as the law abhors litigation and trust funds may be conserved by judicious settlements.

8. SAME—COUNSEL FEES.

The trustee, as such, is entitled to services of counsel in handling the estate, and the reasonable value of such services should be allowed in a suit against him for an accounting.

9. SAME—ACCOUNTING—COSTS.

The costs of beneficiaries of a trust fund in procuring a proper handling of the estate and an accounting by the trustee should be paid out of the trust fund, where the method of rendering accounts was irregular but was acquiesced in by all of the beneficiaries.

Appeal from Genesee; Barton, J., presiding. Submitted October 23, 1917. (Docket No. 82.) Decided December 27, 1917.

Bill by George H. Mann and others against Homer A. Day for an accounting. From the decree rendered, plaintiffs appeal. Modified and affirmed.

*William E. Brown,* for plaintiffs.

*George W. Cook,* for defendant.

FELLOWS, J. In 1879 a copartnership was formed at Saginaw by John J. Rupp and Moore Kerr, with the firm name of Rupp & Kerr, for the purpose of dealing in timber, timber lands, lumber, real estate, mining stocks, mineral rights, corporate property, and other business transactions in Michigan and elsewhere. The business of the partnership was extensive and profitable. The copartnership continued until the death of Mr. Kerr, March 25, 1901. By Mr. Kerr's will the residue of his estate was given in equal shares to his nephews and nieces, 15 in number, and his partner was appointed one of the executors. Seven

of the nephews and nieces transferred and assigned their interest in the estate to Mr. Rupp for a consideration of $6,000 each. Later they learned, or at least became apprehensive, that they had been defrauded into executing such assignments. The record is not clear whether the present defendant was the source of their information. Be that as it may, they employed him to investigate and institute proceeding to set aside the assignments and recover their interest in the estate. They entered into a contract whereby he agreed to use all lawful means to that end, and to pay all expenses incurred in the prosecution of the case, whether successful or not, and to have 50 per cent. of all moneys collected. A power of attorney was also executed appointing him their attorney in fact. A suit was instituted and reached this court. *Kerr* v. *Rupp,* 144 Mich. 269 (107 N. W. 1059). At least one more suit was instituted and possibly others. The result of this litigation was that the assignments of these seven heirs were set aside and Rupp decreed to pay $48,300 in cash to Day as their attorney in fact. No question is made that he did not promptly and faithfully disburse this money. In addition to the cash decreed to be paid by him, Rupp, as surviving partner and as executor, held considerable property, both real and personal, belonging to himself and the Kerr heirs. This consisted of bank stock, plate glass, and other stocks, notes, and bills receivable, and a large amount of real estate—mineral rights, timber, and cutover timber lands—located in Michigan, Minnesota, Louisiana, and elsewhere. In some of this property the interest of Rupp & Kerr was only a fractional one, and it is said that the interests of some of the nephews and nieces having passed by their death to their children the fractions in some instances were as small as one nine-hundredth. It was deemed advisable by all the parties that the interest of the

Kerr heirs should be so placed that it could be more readily handled, and a declaration of trust was prepared and executed by this defendant, making him trustee for himself, the seven interests he had represented, and three other interests, and a similar instrument was executed by one Jay D. Swartwout as trustee for the other five interests. These instruments were filed and a decree was entered August 7, 1907, in the circuit court for the county of Genesee, confirmatory of these trusts and directing the conveyance and transfer of the Kerr property by Rupp to these trustees.

Instead of rendering his account to and making his disbursements by order of the court, the defendant, whenever he had money to distribute, called the beneficiaries together, writing each a letter, keeping the checks and drafts he had received until the meeting, when he showed them, passed them around for the beneficiaries to see, deposited them, and gave his check to each for the distributive share. Either in the letters written, or at these meetings, the beneficiaries were informed the source from which the money came, and if any taxes or expenses had been paid it was fully explained; at times money was retained by him to meet known immediate expenses. Twelve of these disbursements were made with the acquiescence of all the beneficiaries in this manner of transacting the business and the disbursements made, and nearly $50,000 was thus disbursed. September 2, 1914, this bill was filed for an accounting; plaintiff George H. Mann being a nephew of Kerr, Minnie M. Maxfield being a niece, and the other plaintiffs being children of Sarah Williams, a deceased niece. Defendant filed an account to which objections were made. They have been grouped, and we will consider them under their respective heads.

(1) The Rose Gold Mine was indebted to the firm

of Rupp & Kerr on note and open account something over $35,000. The firm also owned nearly half of the stock of the company. The mine was located in San Bernardino county, Cal. It was not being operated when defendant became trustee. The engineer's report shows that over $400,000 of gold had been taken out of it. We infer that this was before the firm of Rupp & Kerr became interested in it, although it was operated until Mr. Kerr's death. They were keeping a watchman, paying taxes, and doing assessment work. Mr. Rupp offered to put in $5,000 as his proportion of $10,000 to be used to rehabilitate the mine in order to get it in shape to operate or dispose of if Swartwout and defendant would put in their shares. Other stockholders declined to put in any more money, but agreed to turn over their stock, which they did. Swartwout agreed to put in his share. Defendant went out to see the mine, and found that some $66,000 worth of machinery had been installed; they had buildings for a boarding house, a store, and 18 residences, all of which would be of little value, unless the mine became a going concern. Defendant, upon his return, advised putting in their share. One of the present plaintiffs also went out and saw the mine. He testifies:

"They asked my advice as to whether it would pay to develop it or not. I told them that the people around the county had an idea that it would be a good thing to go ahead and develop it. I would have been in favor of investing a little more money there and getting it in operation. I told my father and sisters and Mr. Day so, and I may have told the heirs that were present at that meeting. That was my best judgment."

A mining engineer was employed to investigate the property. He did so and made his report. While there is some conflict in the testimony, we are satisfied that all parties in interest finally agreed to the use of

the money for this purpose.  The trial court so found, and we are not inclined to disagree with him on this point.  Up to the time of filing defendant's account he had, from time to time, used money coming into his hands, aggregating $2,480.84 on this mine.  This is objected to by the plaintiffs.

We are not called upon to determine the accountability of a trustee who, acting on his own motion, has invested trust funds in mining stock, or loaned them to a mining company.  Here the trust fund had among its assets an indebtedness in a large amount from a mining company in which the *cestuis que trustent* had a large interest.  After full consideration by all it was agreed to furnish the mining company with a further sum of money from the trust fund, with the hope of recovering the money already invested, and which was hopelessly lost, unless something was done with the mine.  All the beneficiaries having consented in advance to this expenditure, and no fraud being claimed in procuring such consent, these beneficiaries cannot now insist upon an accounting which loses sight of and disregards the fact that all this expenditure was with the acquiescence and consent of the parties now seeking to charge to trustee.  The case of *Quimby* v. *Uhl*, 130 Mich. 198, 212 (89 N. W. 722, 728), is quite in point.  It was there said:

"Even though Mr. Uhl had carried on the business in a way not strictly authorized by the authority conferred upon him, either as assignee or by the Quimbys, yet, having acted in good faith and with their assent, they cannot select those years in which he made a profit, receive the benefit of that, and compel him to pay for the years when there was a loss.  They must take the bad with the good; and it is evident that, for 20 years during which this business was carried on, the profits exceeded the losses.  *In re Small's Estate*, 144 Pa. 293 (22 Atl. 809) ; *Hoyt* v. *Sprague*, 103 U. S. 613.  Where beneficiaries either expressly or impliedly assent to the action of their trustee in managing their

property not in strict accord with the terms of the trust, they will be held to have acquiesced in such action. See authorities above cited; also 11 Am. & Eng. Enc. Law, p. 841; *Heyn* v. *O'Hagen*, 60 Mich. 150 (26 N. W. 861). A party cannot complain when he has consented. *Barton* v. *Gray*, 57 Mich. 636 (24 N. W. 638)."

See, also, *In re Hoffman's Estate*, 183 Mich. 67 (148 N. W. 268, 152 N. W. 952); *Skelding* v. *Dean*, 141 Mich. 143 (104 N. W. 410); *Heyn* v. *O'Hagen*, 60 Mich. 150 (26 N. W. 861); *Truesdail* v. *Ward*, 24 Mich. 117; *In re Shailer's Estate*, 172 Mich. 600 (138 N. W. 205).

(2) Under this objection it is urged that expenses of administering the trust should be borne by defendant. With this contention we cannot agree. The contract does not so provide, nor has it been so construed by the parties. When the property had been recovered from Rupp each had his or her undivided interest therein. For the purpose of minimizing expenses it was deemed advisable to have it handled by a trustee for all. A new arrangement was then made, and new parties brought their interest into the trust arrangement, and defendant undertook to and did act not only for those formerly represented by him, but also for others who had an interest in the estate. No charge has been made by the defendant for his services. He estimates that his traveling expenses have averaged $100 per year. This includes one trip to California, 2 to Minnesota, and 50 to 60 trips to Saginaw. There is no proof assailing this approximation. The court below allowed this item, and we are not inclined to disturb the allowance. But under this head we find some items that should be chargeable to the expense of the litigation, and should be paid by defendant. The expenses of E. L. Bray to Duluth, amounting to $130.60, were a part of the expenses of the litigation, as was also the recording of the de-

crees which was necessary to make record evidence of the result of the litigation. The *pro rata* share of expenses of investigating and looking after property held in common with others, after the trust was created, should be borne by the trust estate, and these are a proper charge.

(3) The objection to the item of $191.43 paid the Alger-Smith Company does not appear to be seriously urged. This was paid the company upon the failure of title to land sold it, and should be allowed. The other item objected to under this head involves the *pro rata* share of expenses in connection with the Louisiana timber lands, and is covered by what we have already said, and was properly allowed.

(4) Among the assets recovered and becoming a part of the trust estate were certain timber lands in Louisiana. The interest of the trust estate was one-ninth. The trust estate represented by Mr. Swartwout was also interested. Acting for his *cestuis que trustent* and for those represented by Mr. Day, he investigated this property with a competent timber cruiser. We have held that the expenses of such investigation were a proper charge. The holdings were quite extensive; the entire tract being sold for $163,323.60. All the other parties were willing to sell at $40 per acre. After the matter was fully investigated all the beneficiaries of this trust joined in a writing authorizing defendant to sell at this price. His testimony and that of Mr. Swartwout shows that the price received was a fair one, and all that was then attainable. As against this undisputed testimony it is sought to surcharge defendant with the difference between $40 and $75 per acre, solely upon the strength of a telegram sent by Mr. Swartwout soon after he reached Louisiana, that some lands in the neighborhood of these lands were worth $75 per acre, that they were being held at that figure. But Mr. Swartwout ex-

plains fully that these lands were nearer the railroad and were more heavily timbered; the parties buying the tract in question were buying it for the timber. The plaintiffs offered no proof that the lands in question were actually worth more than $40 per acre. They had agreed to a sale at that figure. The undisputed testimony showed that they were sold at the best attainable price. We cannot in the face of this testimony surcharge defendant. If the lands were then worth more than $40 per acre, plaintiffs could easily have made the proof.

(5) The fifth objection is a general one. Nothing definite is pointed out, and it need not be considered.

(6) After the death of Moore Kerr, and before defendant's appointment as trustee, Mr. Rupp conveyed certain real estate belonging to the firm with covenants of warranty in the deeds. Upon the accounting between him and the heirs he paid over the entire share of the estate received on these sales, but the beneficiaries executed an instrument indemnifying him on his covenants of warranty after he had exhausted his remedies. Certain of the lands so conveyed by him had been acquired from railroad companies who had received them as grants. Investigation revealed that in several instances they were occupied by squatters claiming rights by adverse possession. These rights were purchased and a settlement made with all of them. It is insisted that instead of settlements there should have been litigation. We are not pointed to any testimony showing that the claims of these squatters were not valid, or wherein litigation would have resulted in any benefit to the trust estate. Whenever any money was used to settle these claims it was reported to the beneficiaries, and with their acquiescence deducted from their share on the distributions that were had. It is now too late to charge the trustee with the sums so paid; nor

should we penalize the trustee for settling a claim which, in the exercise of good business judgment, he deemed it wise to settle. The law abhors litigation, and trust funds, as well as personal funds may many times be conserved by judicious settlements, rather than protracted and expensive litigation.

(7) The court made an allowance for an attorney fee, not as compensation between the defendant and his counsel, but to be paid from the fund. This allowance is not contested as unreasonable or excessive. It is not compensation to counsel for services performed for Mr. Day individually, that must be adjusted between them, but was allowed as compensation for services performed by counsel for the trust estate. No good reason has been advanced for its disallowance. The trustee, as trustee, was entitled to the services of counsel, and the amount appearing to be reasonable its allowance will not be disturbed.

(8) We think the plaintiffs should have recovered their taxed costs in the court below out of the fund. The method of rendering accounts was an irregular one for trust accounting. It was agreeable to and acquiesced in by all. By plaintiffs' action the manner of handling the estate, the manner of accounting for the trust funds, was finally put in correct channels. The fund should pay their taxable costs incurred in securing this result. The decree has not been sufficiently modified to justify costs of this court, and no costs will be here allowed. As modified the decree will be affirmed.

All parties agree that the defendant should continue to act as trustee; but he is admonished that the estate should be closed with all reasonable speed. We do not desire to be understood as saying that the assets should be sacrificed, but no good reason appears to us why such assets as bank stock in an old established bank, or other investments that may find

199—Mich.—7.

a ready market, should be longer held undivided and undisposed of. The affairs of the trust estate should be wound up as speedily as may be compatible with good business judgment under the direction of the circuit court.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.