BLANCHE SPENCER, TRUSTEE,

*Plaintiff and Appellant,*

vs.

LAKE C. HARRIS,

*Defendant and Respondent.*

(No. 2561; January 6th, 1953; 252 Pac. (2d) 115)

For the plaintiff and appellant, the cause was submitted upon the brief of Thomas O. Miller of Lusk, Wyoming, and Edward S. Halsey of Newcastle, Wyoming, and oral argument by Mr. Miller.

For the defendant and respondent the cause was submitted upon the brief of James E. Barrett of Lusk, Wyoming, and Erle H. Reid of Torrington, Wyoming, and oral argument by Mr. Barrett.

508

## OPINION

BLUME, Chief Jusice.

It is not necessary to give anything but the barest outline of the main action herein. Blanche Spencer, Trustee, as plaintiff, sued Lake C. Harris, defendant. Plaintiff alleged in her amended petition that on or before August 24, 1949, the plaintiff individually and Leonard Ong, Thomas O. Miller, C. D. Jennewein, Roscoe Kilmer, Oscar Bostrom and Lake Harris (defendant herein), loaned to Wyoming Quarries, Inc., doing business at Lusk, Wyoming, the sum of $36,723.70, the persons named contributing various but unequal amounts to the loan; that the Wyoming Quarries aforesaid executed to Blanche Spencer, as trustee for the benefit of the persons above named, a promissory note for the loan so made and a mortgage on its property; that the mortgage was foreclosed and the property was bid in at the mortgage sale by Blanche Spencer, Trustee, for the sum of $16,021.15; that Wyoming Quarries thereafter made to the plaintiff an assignment of all of its assets and property. The plaintiff further alleged that the defendant, Lake Harris, converted numerous items of personal property, consisting of tools, machinery, equipment and supplies which were a part of the Wyoming Quarries. The value of this property so converted was $8,000; that the defendant owes other items which need not be mentioned herein; that defendant wilfully converted the tools, machinery and equipment aforesaid for the purpose of crippling the operation of the plant which had been acquired by the plaintiff. Judgment was asked for compensatory and punitive damages in the sum of $20,700.

The defendant in his answer admitted the execution of Wyoming Quarries of the mortgage and note above mentioned to Blanche Spencer, as trustee, for the benefit of the persons above named. He admitted taking

part of the property mentioned in the petition but alleged the value to be not more than the sum of $632.08. He also set forth a cross petition and counter claim and asked for an accounting between the parties.

On February 21, 1952, the defendant Lake C. Harris filed a motion to dismiss the action of the plaintiff herein alleging that the case was compromised and settled. Thereupon the trial court on its own motion directed the parties to file supplemental pleadings in connection with the compromise claimed by the defendant. Thereupon the defendant filed a supplementary answer alleging that on January 17, 1952, plaintiff and defendant entered into an agreement of compromise and settlement which agreement is as follows:

### "AGREEMENT

"Certain business disagreements having arisen between Blanche Spencer of Lusk, Wyoming, and Lake C. Harris of Jay Em, Wyoming, as a result of which the said Blanche Spencer filed suit in District Court at Lusk against the said Lake Harris, and said parties having agreed upon a settlement of their business differences, for and in consideration of such mutual promises and forbearances,

IT IS HEREBY AGREED:

"That the said Blanche Spencer as the plaintiff in such action will forthwith dismiss such action so filed in District Court with prejudice and at her own costs; and that the said Lake C. Harris will forthwith dismiss his counter-suit so filed in said District Court with prejudice and at his own costs; each paying his or her own attorney fees in said action;

"That said Lake C. Harris in full settlement of any obligations to the said Blanche Spencer, Blanche Spencer Trustee of Wyoming Quarries Inc., has this day

paid to the said Blanche Spencer personally and as Trustee, the sum of Five Thousand Dollars ($5,000.00), which such payment shall be in full remuneration for all such claims or damages, and shall include the transfer of the following items of personal property and this agreement shall be a bill of sale to such personal property as follows:

"The following items at the Lusk Plant and all items at the Granite Quarries now owned by Blanche Spencer or as Trustee including, 2 Lane polishers, complete with motors and belts and wires. Ford truck-winch, Model 1930. Delta drill. Bull wheel and hoist at quarry. Pneumatic grinder. Moulding machine with wiring and motors. Electric hoist, two ton. Electric bench grinder. Quarry bar. All steel hand winch and all materials, supplies and tools used at the Lusk plant of the Wyoming Quarries by said Lake C. Harris while operating there or moved from there to Jay Em, Wyoming, including steel shot, carborundum, carborundum wheels, blasting sand, oils, greases, lumber, chisels, bits and points, blades, air hammers or other hammers, grinder wheels, drill steel, hose, air and water, and other fittings, shims, wedges, black pipe, sheeves, crowbars, buffing powder, jack hammers, jack hammer bits and plug drills, buffing, grinding and emery wheels.

"It is agreed that Mrs. Spencer will not be required to deliver any items which cannot be found for delivery, which are listed as materials, supplies and tools used by Lake Harris at the Lusk plant or moved to Jay Em.

"Dated at Lusk, Wyoming, January 17, 1952."

A reply was filed to the supplemental answer alleging that the so-called settlement and compromise was not fair; that the plaintiff had no opportunity to go over the matters with Thomas O. Miller, her attorney

and co-cestui que trust, who was absent from Lusk and was not available for consultation; that she did not agree to the compromise except on the condition that it would be satisfactory and confirmed by Miller; that thereafter she advised the defendant that Miller did not agree to the settlement; that she returned the money and note given her and that the same was accepted by the defendant.

The question tried in this case was whether or not a compromise and settlement above mentioned was entered into and whether it was fair. It appears that the defendant on January 17, 1952, had some conversation with C. D. Jennewein and Roscoe Kilmer, co-beneficiaries of the trust, in regard to compromising the lawsuit involved herein. He went to his own attorney, who refused to have anything to do with the compromise unless Miller, attorney for Mrs. Spencer and a co-beneficiary who was at that time absent from Lusk, was present. The defendant thereupon went to some other attorney and had the compromise agreement above mentioned drawn up and in the evening of that day, he went to the home of Mrs. Spencer, accompanied by his son and C. D. Jennewein, and then induced Mrs. Spencer to enter into the agreement above mentioned. He testified that the agreement was unconditional and voluntary on Mrs. Spencer's part. He admitted that Mrs. Spencer tendered back the note and cash above mentioned but that he did not accept them, but that Mrs. Spencer left them on a counter. He presented the note and the check for $1,000 in court. Mrs. Spencer on the other hand claimed that whatever settlement was made was conditional as she alleged in her reply to the supplemental answer. C. D. Jennewein testified that the value of the property undertaken to be sold to the defendant in the compromise agreement and which was not a part of the property converted by the defendant, as alleged in the amended petition, was as follows:

2 polishers, $3,000 to $3,400; Ford truck, $300 to $400; Delta drill, $200; Bull wheel, $700; Hoist, $1,500; Pneumatic grinder, $200; Moulding machine, $1,500; Electric hoist, $200; Electric bench grinder, $150; Quarry bar, $700, making a total of $8,450 to $8,950. Jennewein further testified that the defendant was trying to get enough property so as to equal the amount of the check and the note which he gave. His testimony is uncontradicted. The trial court held the compromise to be valid, and dismissed the main action. Plaintiff has appealed.

We are in this case dealing with the action of a trustee and the action of a co-cestui que trust. Special rules are applicable in such a case different from those which apply to the ordinary case of a compromise and settlement. Three different rules of law or equity govern this case. We shall proceed to consider these.

1. Power of Sale.

The trustee undertook, by the compromise, to sell some of the property of the trust. It is stated in 65 C.J. 730, § 594: "In the absence of express or implied authority conferred by the instrument creating the trust, and in the absence of the voluntary consent of all the benefiicaries, a trustee is under no duty to sell and convey the corpus of the trust property and *has no power to do so*. (Italics are ours.) Many cases are cited. In 2 Beach on Trusts and Trustees, § 449, the author states: "The power to sell the trust estate is not inherent to the office of a trustee in an ordinary trust. Under ordinary circumstances this power cannot be exercised unless it is conferred by the instrument by which the trust is created, or by a decree of the court." In 3 Bogart, Trusts and Trustees, § 742, the author states: "If the trustee has no express or implied power of sale and cannot procure such authority through the somewhat extra-ordinary means of legis-

lative act, he must apply to the court of equity or other court to whom power is given by statute to sanction a sale." In 2 Scott on Trusts, § 190.3, the author states: "Where the terms of the trust do not clearly authorize or prohibit the sale of trust property, the existence or non-existence of a power of sale may depend upon the character of the property in question." In § 190 of the Restatement of Trusts, it is stated: "The trustee can properly sell trust property if (a) a power of sale is conferred in specific words, or (b) such sale is necessary or appropriate to enable the trustee to carry out the purpose of the trust * * * * "

The trust in the case as bar, did not, so far as appears, owe any debts. No specific power of sale was conferred. There is no indication in the record whatever that it was necessary or appropriate to sell part of its property to carry out the purpose of the trust. On the contrary, the property sold under the so-called compromise was property belonging to the quarry or plant owned by the trust and, we take it, was necessary for the operation thereof, otherwise it would hardly have been acquired. It would seem to be clear that under the facts and the authorities above cited, the trustee had no power to sell the property attempted to be sold to the defendant without the consent of the beneficiaries. A trustee ought not to be permitted to mutilate the property of a trust so as to frustrate the purpose for which it was acquired. The defendant is not an innocent purchaser. He was himself one of the beneficiaries in the trust involved herein. We conclude, accordingly, that the sale of such property to him was not authorized and was null and void. And since the agreement to dismiss the lawsuit is inextricably interwoven with the agreement to sell and is based on the same consideration, it must share a like fate.

2. Duty and Liability of One Cestui Que Trust to the Others.

It is stated in 65 C.J. 545, § 299: "One cestui que trust cannot acquire rights in, or with respect to, the trust estate, which are antagonistic to or will give him an advantage over his associates in interest." In 1A Bogert, Trusts and Trustees, § 191, the author states: "Cestuis are owners of equitable interests in the same res and are generally tenants in common. They are in a fiduciary relation to each other in the sence that one co-cestui may not secretly get for himself a special advantage in the trust administration." See also 2 Scott on Trusts, § 253. In Re DuPlaine's Estate, 185 Pa. 332, 39 A. 947, 948, 40 L.A.R. 552, the court stated: " 'It has been settled that where there is a community of interest there is a community of duty; each of those interested must be faithful to himself, and equally as well to all the others interested. He can secure no advantage over the others because he has found out something they do not know, or because perhaps he is in a better position to protect himself than are they. The rule of law as stated in Keech v. Sandford, 1 White & T. Lead. Cas. Eq. (4th Am. Ed.) 64, has been followed in numerous cases in this state. "Whenever one person is placed in such relations to another, by the act or consent of that other, or by the act of a third person, or by the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated." This doctrine was enforced in Weaver v. Wible, 25 Pa. St. 270, the syllabus of which is as follows: "When several persons have a joint or common interest in an estate, one cannot purchase an incumbrance or an outstanding title, and set it up against the rest, for the purpose of depriving them of their interests." Chief

Justice Lewis, in delivering the opinion, said: "Community of interest produces community of duty. * * * * It is the duty of all to deal candidly and benevolently with each other, and to cause no harm to their joint interests." * * * ' "

In the case at bar the defendant, as already stated, was one of the cestui que trust of the trust here involved. That he attempted to overreach his co-cestuis, represented in this suit by Mrs. Spencer, is obvious. He sought to settle a suit for $20,700 secretly while Miller, the attorney for the trustees and one of the cestui que trust, was absent, imparting a wrong flavor to the transaction. If his transaction with Mrs. Spencer should not be set aside for that reason alone, it should at least be carefully scrutinized.

3. Power of Trustee to Compromise a Claim.

The main arguments of counsel herein have been devoted to the point as to whether or not a trustee may compromise a claim, including the litigation in the main case. Because of that, and since the question is new in this state it would seem advisable to make more than a cursory examination thereof. We think that a distinction should be made between an active trust and a passive or naked one. Counsel for the defendant maintain that the trust involved herein is an active one. Counsel for plaintiff do not distinguish between these. They cite 2 Perry on Trusts and Trustees, § 520, in which the author states that a release or dismissal of an action without the consent of the beneficiaries cannot be made by a trustee. However, the author there treats of naked or passive trusts and the authority is not in point unless it can be said that the trust involved in this case is one like that. The fact that the suit herein was brought in the name of the trustee seemingly does not, according to the same citation make the trust an active one. Mrs. Spencer was mort-

gagee and bought the property at a mortgage sale. No other duty seems to have devolved on her. And we are in some doubt as to whether or not that made her an active trustee, authorizing her to dismiss an action and compromise it when that action involved the conversion of some of the property of the trust. The point has not been sufficiently investigated by counsel and has not been sufficiently argued and we shall not decide it. See 1A Bogert, Trusts and Trustees, § 206. So we shall pass to the question as to the power of a trustee under an active trust.

We are cited by plaintiff to 65 C. J. 689, wherein it is said that: "As a general rule a trustee has no general authority to compromise a claim due the trust estate." But that does not mean that he may not do so under proper circumstances. 2 Beach on Trusts and Trustees, § 455, refers to the same matter, and states: "The power to compromise a debt due to the trust estate is not a part of the general powers of a trustee, but if he makes a compromise of such a character that it plainly promotes the interest of the *cestui que trust*, and would have received the sanction of the court, if application had been made, it will be upheld in equity."

Counsel for plaintiff further cites us to the case of In Re Bremer's Will, 156 Misc. 160, 281, N.Y.S. 264, 269, in which it is stated that: "A trustee has no power to change or compromise the trust property committed to his charge without authority expressed in the instrument establishing the trust." While the result in the case cannot be said to be wrong, the broad language employed seems too broad when attempted to be applied to a case such as that before us, in which no instrument fixing the powers of the trustee exists. Moreover, the case cites Colorado & Southern Ry. Co. v. Blair, 214 N.Y. 497, 108 N.E. 840, in which the trust was in the main passive or naked.

The first case which dealt directly with the point before us seems to be the case of Blue v. Marshall, 3 P. Wms. 380, 24 English Reprint 1110, decided in 1735, in which the syllabus reads: "Though, generally speaking, an executor or trustee compounding or releasing a debt, must answer for the same; yet if this appears to have been for the benefit of the trust estate, it is an excuse." Courts have not since that time greatly deviated from this general statement, although some of the courts have been more cautious in their statements than others, and some have applied the rule, perhaps more strictly than others. The Restatement of the Law on Trusts, § 192, states the rule as follows: "The trustee can properly compromise, submit to arbitration or abandon claims affecting the trust property, provided that in so doing he exercises reasonable prudence." So in 2 Scott on Trusts, § 192, it is stated: "Where however, it is reasonably prudent to compromise a claim, the trustee has power to do so. It is only where he acts in bad faith or imprudently in making such a compromise that he thereby commits a breach of trust." See also to the same effect 3 Bogert on Trusts and Trustees, § 592, and 2 Perry on Trusts and Trustees (7th Ed.), § 482. And a number of comparatively recent cases follow the same rule. Redmond v. Commerce Trust Co., 144 F. (2d) 140, 155; Purcell v. Robertson, 122 W. Va. 287, 8 S.E. (2d) 881, 884; Jones v. Jones, 297 Mass, 198, 7 N.E. (2d) 1015, 1020; Kinion v. Riley, 310 Mass. 338, 37 N.E. (2d) 984, 985; Sheridan v. Riley, 133 N. J. Eq. 288, 32 A. (2d) 93, 95; Butler v. Butler, 180 Minn, 134, 230 N.W. 575, 579; Mann v. Day, 199 Mich. 88, 165 N.W. 643, 646; Broeker v. Ware, 27 Del. Ch. 8, 29 A. (2d) 591; Suffolk County National Bank v. Licht, 256 App. Div. 1080, 11 N.Y.S. (2d) 124; Matter of Ledyard, 21 N.Y.S. (2d) 860, 259 App. Div. 892, 1029.

We might incidentally mention the fact that under § 6-1908, W.C.S. 1945, executors or administrators (who, of course, are in fact trustees) may compromise a claim due to the estate with the approval of the court. And in a number of states, authority to compromise is given by statute, even without the approval of the court. See 3 Bogert, Trusts and Trustees, notes to § 592.

Testing the facts in this case by the foregoing rule, we think that the so-called compromise herein must be condemned for two reasons. In the first place, a trustee who, according to her own testimony, knew comparatively little about the poperty in controversy here, can hardly be said to have acted prudently when she attempted to settle the lawsuit herein in the absence of her attorney and co-cestui when she knew as the testimony shows that the compromise would displease him and would not be confirmed. We feel reasonably certain that if the compromise had been presented to the court for approval in the first instance, at the time when it was made, it would not have been approved in the absence and against the wishes of Miller, and that has been said to be one of the criteria as to whether or not it should be approved later. Bacot v. Heyward, 5 S.C. 441. In the second place, the lawsuit attempted to be settled called for damages of $20,700. The defendant gave $5,000 and received in return property valued at $8,450 to $8,950 as the undisputed testimony shows, so that the lawsuit was attempted to be settled without any consideration whatever. The transaction was, in fact, no compromise at all. It was a gift. That such a transaction cannot stand is obvious and is hereby annulled.

The judgment of the trial court is reversed with direction to proceed to the hearing of the main case, giv-

ing the right to the plaintiff to file an additional cause of action for the recovery of the property given defendant under the so-called compromise, or the value thereof.

RINER, J., and ILSLEY, J., concur.